[Crim. No. 1238. In Bank.—November 10, 1905.]

THE PEOPLE, Respondent, v. JOHN MAHATCH, Appellant.

CRIMINAL LAW—MURDER IN FIRST DEGREE—DELIBERATE PURPOSE TO KILL—INFERENCE BY JURY—EVIDENCE.—In order to sustain a verdict of murder in the first degree, it is not necessary, where the killing is not denied, that there should be express evidence of a deliberate purpose on the part of the defendant to kill. Such deliberate purpose may be inferred by the jury from proof of such facts and circumstances in the case as would reasonably warrant an inference of its existence; and the making of such inference is exclusively within the province of the jury.

ID.—PHOTOGRAPHS OF LOCALITY OF HOMICIDE.—On a trial for murder photographs of the locality of the homicide, which disclosed upon their face the presence of certain objects placed on the ground by one of the witnesses at the time the photographs were being taken to indicate where the body of the deceased and other physical objects were located when the scene of the homicide was first visited by him, after being properly identified as being correct, are admissible in evidence as diagrams of the locality.

APPEAL from a judgment of the Superior Court of Del Norte County and from an order refusing a new trial. J. L. Childs, Judge.

The facts are stated in the opinion of the court.

E. E. Winters, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

LORIGAN, J.—Defendant was tried and convicted of murder in the first degree, and sentenced to be hanged. He appeals from the judgment and order denying his motion for a new trial.

Defendant and deceased, F. Confaglia, on the morning of Sunday, May 15, 1904, went in a rowboat down the Klamath River in Del Norte County, to a town called Requa, some four miles from their place of residence. Confaglia purchased a sack of flour and some other articles, including a bottle and a flask of whisky, and about four o'clock in the after-

noon they started in their boat to return home, the defendant rowing. Between them they drank the whisky on their way up the river, save a parting drink which defendant claims they took after reaching their point of debarkation,—Isle's Landing,—an isolated spot on Regan Creek, a tributary of the Klamath River. As near as can be ascertained from the evidence, they reached this point about seven o'clock in the evening. From the time they left Requa the parties were not seen by any one (except by a boatman they met on the Klamath before they pulled into Regan Creek, to whom they gave a drink, and who testified that both were in his judgment intoxicated) until the defendant appeared later in the evening near the residence of Martha Isle, about a half-mile from the boat landing. Mrs. Isle was standing outside her barn, and as to what took place testified: "Johnnie Mahatch came up and looked scared, and told me he had a row with Mr. Confaglia, and I asked if Mr. Confaglia had gone on home. He said: 'No, he is asleep down there some place.' He had a mark on his face, and I asked him if he scratched his face. He said: 'No,' Confaglia hit him. He had no coat or hat on." Defendant left immediately after this conversation, and Mrs. Isle and others whom she had called repaired to the landing, where they found the dead body of Confaglia. The evidence showed that his body was found lying above the bank of Regan Creek, some distance from the landing; that his death was occasioned by a stab wound in the heart, and must have been instantaneous. Some distance from the body was found a large knife, identified by witnesses as belonging to defendant, and in his possession as late as two weeks before the homicide. The hat and coat of defendant were also found at different points in the vicinity of the body. The contents of the boat—the flour, other articles, and the boat's sail—had been taken out and deposited on the bank.

The defendant voluntarily appeared as a witness at the coroner's inquest, and testified in his own behalf upon the trial. At the inquest he testified that when he and Confaglia reached the mouth of Regan Creek Confaglia wanted to take the boat further up than Isle's Landing, so as to deposit the flour and other articles near his residence, but on the suggestion of the witness that it was best to leave the boat where

they got it, as it might be needed on the morrow, Confaglia consented to put in at the landing; that they both assisted in unloading the boat, placing its contents above the bank, which being done he asked Confaglia the time, who told him it was about six o'clock; that he then told Confaglia that he would have to leave, as he was late for supper, and did leave; that when he left he was pretty full, and forgot his coat; that the last he saw of Confaglia he was standing where the sack of flour had been placed. He further testified that, while he was pretty full, he had sense enough to go home, and knew what he was doing all the time; that Confaglia was pretty full also. He stated that he had no trouble or dispute with Confaglia at the landing or elsewhere, and denied making the statement testified to by Mrs. Isle. As to the knife found near the body, he denied that it was his, although admitting he had owned one similar to it, which, however, he said he had lost some two months previously. At the trial his testimony was of a similar character, except that the direct inquiry was made of him (which was not made at the inquest) whether he had killed Confaglia or not. To this he answered that he could not tell; he could not tell whether he had fought with him or not; he was so drunk.

The principal point made on this appeal is that the evidence did not warrant the jury in returning a verdict against defendant of murder in the first degree, it being insisted that the evidence fails to show the existence of that deliberate purpose to take the life of Confaglia proof of which was essential in order to constitute murder of that degree. Counsel for appellant enters into no discussion of this point in his brief, nor does he indicate in what particulars or why the evidence is insufficient to sustain the verdict. He simply summarizes the evidence, and declares that it does not tend to prove deliberate and premeditated killing. As we take it, from the manner in which he states the evidence, he assumes that it was necessary that there should have been express evidence of a deliberate purpose to kill in order to warrant the verdict as returned. But this was not necessary. It could be inferred from proof of such facts and circumstances in the case as would reasonably warrant an inference of its existence. The defendant did not deny that he killed Confaglia. He claimed on the trial that he was so intoxicated

as to know nothing about the killing.   Under this claim the
court properly and clearly instructed the jury, pursuant to
section 22 of the Penal Code, upon the matter of intoxication
as bearing upon the degree of crime with which he was
charged.   No exception is taken to the fullness or fairness of
the instructions in that respect, and the jury from their ver-
dict found, as they had a right to do under the evidence,
against the defendant's claim of intoxication as affecting the
intent with which the killing was done.   The jury, having
found that the only extenuating circumstance which he in-
terposed had no existence in fact, and no claim of any
circumstances of mitigation, justification, or excuse for the
killing being advanced, had a right to infer, from the char-
acter of the weapon used, the nature of the wound inflicted,
and the acts and conduct of the accused, the existence of a
deliberate purpose on his part to kill the deceased when the
fatal blow was struck, and, so inferring, were warranted in
returning a verdict therefrom for murder in the first degree.
This is the general, it may be said the universal, rule.   If a
different one prevailed, secret murders could rarely be pun-
ished by the infliction of the highest penalty.   It is exclusively
the province of a jury to determine the degree of crime when
there is any evidence in the case which will support the de-
termination.   We are satisfied that in the case at bar there
was sufficient evidence to warrant the jury, within the rule
we have stated, in inferring the existence of a deliberate in-
tent to kill.   They so found and awarded the highest penalty,
and their finding was approved by the trial judge on the
motion for a new trial.   This is conclusive upon the subject
and upon us, as we can only disturb a finding when we can
say, as matter of law, that there was no evidence to sup-
port it.

It is insisted that the court erred in admitting in evidence
certain photographs.   These photographs were used simply
as diagrams of the locality of the homicide, and as showing
the condition of things in the vicinity where the body of
deceased was found.   They disclosed upon their face the
presence of certain objects placed on the ground by one of
the witnesses at the time the photographs were being taken
(who testified that they were correctly placed by him) to
indicate where the body of deceased, the knife, the hat, and

the coat of defendant, and the hat of deceased were located when the scene of the homicide was first visited by him. It is urged that the presence of these indicative objects in the photograph was merely hearsay evidence, and for that reason the photographs were inadmissible. An objection similar to this, with reference to the admission of photographs marked to indicate the locality of certain objects, was presented for consideration in *People* v. *Crandall*, 125 Cal. 133, [57 Pac. 785], is fully discussed there, and it was held that the objection was untenable.

Appellant lastly contends against the accuracy of certain instructions given by the court to the jury. No useful purpose could possibly be subserved by quoting and discussing them. They are instructions on "intent," "motive," and "reasonable doubt," given in the language common and usual to instructions on these subjects, and correctly state the law.

Finding no error in the record, the judgment and order denying the motion for new trial are affirmed.

McFarland, J., Shaw, J., Van Dyke, J., Henshaw, J., and Angellotti, J., concurred.

BEATTY, C. J.—I dissent. There was, in my opinion, no evidence adduced at the trial to warrant a verdict of murder of the first degree. Bare proof of an unlawful killing does, it is true, establish *prima facie* a case of murder, but only murder in the second degree. It casts upon the defendant the burden of proving that the killing was justifiable or excusable, or attended by circumstances of mitigation which will reduce the offense to the grade of manslaughter; but it leaves with the people, if they demand a verdict of murder of the first degree, the burden of proving beyond a reasonable doubt some facts or circumstances from which it may be rationally inferred that there was on the part of the defendant a deliberate purpose to take the life of the deceased. This proposition has been established by more than one decision of this court. In *People* v. *Knapp*, 71 Cal. 6, [11 Pac. 795], it is said: "And unless the express malice is affirmatively proved, a defendant cannot be convicted of murder of the first degree, even though his commission of the homi-

cide is proved, and there is no evidence that it is man-
slaughter, or that the killing was justifiable or excusable;
but in such case, the verdict should be guilty of murder of
the second degree." Other decisions giving the same con-
struction to our statute, dividing murder into two degrees
and defining their elements, might be cited, but a further
citation is unnecessary,—the statute itself being very plain
to that effect. What, then, is that express malice which
(except where the killing is perpetrated in the commission
or attempt to commit certain enumerated felonies) must be
affirmatively proved in order to warrant a verdict of murder
in the first degree? The statute defines it: "Malice is ex-
press where there is manifested a deliberate intention unlaw-
fully to take away the life of a fellow-creature." (Pen. Code,
sec. 188.)

In my opinion, there is absolutely no evidence in this
record from which it can be rationally inferred that there
was any deliberate intention on the part of the defendant to
take the life of Confaglia. There was no motive of revenge,
of robbery, or of any sort proved or suggested, but simply
the bare fact that he stabbed him with the hunting-knife
which he habitually carried. The evidence introduced by
the prosecution showed that the two were friends prior to
the killing, that they went to town together to buy provisions,
and that Confaglia bought a quart and a half of whisky,
which he and the defendant drank on their way back to the
boat landing. It does not appear by any direct statement
in the record that the defendant is an Indian, but indirectly
it does. We know that, except by a violation of the law, In-
dians cannot obtain alcoholic beverages, and we know that
the law which makes it a crime to sell whisky to an Indian
is justified by the fact that intoxication renders them in a
peculiar degree irresponsible and reckless. The evidence in
this case shows that this defendant was drunk, but entirely
friendly up to the time he and Confaglia reached the boat
landing; that the contents of the boat were placed upon the
high bank of the river, and then that a struggle ensued on the
brink of the stream where the knife was found; that the
fatal wound was inflicted there; that the defendant went
away, leaving his hat, coat, and knife behind him. This is
all that the evidence shows. It proves a killing with that

malice only which is implied in the absence of evidence of provocation. Evidence of express malice is wholly wanting, and, if so, it is not murder in the first degree.