[Crim. No. 1382. In Bank.—August 6, 1907.]

## THE PEOPLE, Respondent, v. A. J. GRILL, Appellant.

CRIMINAL LAW—MURDER—CORPUS DELICTI—EVIDENCE.—In a prosecution for murder, it is *held,* upon a review of the evidence, that there was sufficient proof of the *corpus delicti* without aid from the defendant's admissions.

ID.—ACCIDENTAL KILLING—BURDEN OF PROOF—INSTRUCTIONS. — On a trial for murder in which the defense was that the killing was accidental, it is proper for the court in its instructions to read to the jury section 1105 of the Penal Code, as follows: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." The phrase "the commission of the homicide by the

defendant being proved," is properly construed as an expression of a condition or event upon which the succeeding part of the instruction would become applicable, and, especially in view of the other instructions, could not have been interpreted by the jury as an intimation by the court that the commission of the homicide by the defendant had been proved.

ID.—JUSTIFICATION OF KILLING—MITIGATION—INSTRUCTION.—The applicability of such an instruction is not limited to cases where the justification offered is that the killing was in self-defense. It applies in any case where the defendant offers evidence in mitigation of the offense,—that is, to reduce the degree of the crime; or in justification, as that it was in self-defense or in the lawful execution of a death sentence; or in excuse, as that it occurred by accident and not design.

ID.—DISTRUST OF WITNESS.—The giving of an instruction that "a witness willfully false in a material part of his testimony is to be distrusted in others" is not cause for reversal.

ID.—CONVICTION OF MURDER OF FIRST DEGREE—PENALTY OF IMPRISONMENT FOR LIFE—RETRIAL—DEATH PENALTY.—Where a defendant charged with murder of the first degree is convicted of murder of the first degree with the penalty of imprisonment for life, such judgment of conviction is not a bar to the infliction of the death penalty upon a retrial of the same charge granted upon the defendant's motion.

ID.—PHOTOGRAPH OF PLACE OF HOMICIDE—EVIDENCE.—On a trial for murder, a photograph of the room in which the homicide was committed, taken six days after its occurrence, is admissible in evidence as a diagram or illustration of the articles shown therein, upon sufficient proof being made that at the time the photograph was taken such articles were in substantially the same position as they were in when the body of the deceased was first found in the room.

ID.—ABSENCE OF WITNESS FROM STATE—ADMISSION OF DEPOSITION.—The evidence is held sufficient to show that a witness, whose deposition taken at the preliminary examination of the defendant was admitted at the trial, was absent from the state at the time of the trial and could not be produced as a witness.

ID.—PRELIMINARY PROOF—ORDER OF PROOF.—Any error in the reading of such deposition before the proper foundation therefor has been entirely laid is cured by the subsequent proof of the absence of the witness from the state.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order refusing a new trial. A. G. Burnett, Judge.

The facts are stated in the opinion of the court.

Ross Campbell, for Appellant.

CLI Cal.—38

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

SHAW, J.—The defendant was charged with the murder of one W. S. Pearse. He was convicted of murder of the first degree. His motion for a new trial was denied and he was sentenced to death. He appeals from the judgment and order.

1. Certain statements made by the defendant, wherein he admitted that Pearse received his death-wound from a shotgun which defendant at the time held in his hands, he claiming that the discharge was accidental, were introduced in evidence. It is urged that there was no sufficient proof of the *corpus delicti* aside from these admissions. This claim is evidently based on the assumption that the deposition of Mae Pearse, daughter of the deceased, was improperly admitted in evidence, and upon a consideration only of the other evidence of the prosecution. We have concluded, as will hereafter be shown, that her deposition was properly admitted, and with that evidence the proof of the *corpus delicti* is ample without aid from the defendant's admissions.

At the time of the homicide, Pearse, with his daughter, who was fourteen or fifteen years old, was living in a small cabin consisting of two rooms, one in front of the other, with a door communicating between them. Grill had arrived at the Pearse cabin the day before on a visit, and had remained overnight, sleeping in a bed in the rear room. On the day of the homicide, which was Sunday, Pearse and Grill went hunting together, returning to the cabin about seven in the evening. Pearse then, according to the evidence for the prosecution, accused Grill of stealing some money which he said he had left in the house, and there was a quarrel between them which continued from time to time until about nine o'clock, Pearse in the mean time having taken off his clothes preparatory to going to bed. Some noise was made by a dog on the outside of the house, whereupon both men went out of the house, Grill carrying a shotgun. The noise subsided, both re-entered the house, and Pearse apparently laid down upon the bed in which he usually slept. This bed stood in the left-hand corner of the front room, with the head toward the door leading to the rear room. The quarrel continued after

they re-entered the house, and presently a shot was heard. Grill came out of the house, saying to the daughter that he had killed a skunk. Thereupon he and the daughter, who had remained outside, left the premises in a buggy and drove to the residence of Mrs. Stoffal, where the daughter remained. Grill had been working for Mr. Jacobs, a neighbor of the deceased, and he arrived at Jacobs's residence about midnight and stayed there the remainder of the night, sleeping in a room by himself. The following morning he went to his work without mentioning Pearse's death or saying anything about any trouble at Pearse's residence. The next morning Pearse was discovered by the neighbors lying upon his bed dead from a gunshot wound in the back part of the head. He was lying on his back, but partly on his left side, facing towards the front of the house, with the back of his head toward the rear room, his head resting on a pillow. A double-barreled shotgun, with one barrel recently discharged, lay upon the floor in front of the bed. The position and character of the wound indicated that the shot had come from the rear, and a witness who saw the body as it was found testified that ''The shot came right from the rear, right square from the rear; it couldn't come from any other direction.'' Five or six slits cut in the pillow a few inches from the head of the deceased, and apparently made by shots from the gun, pointed in the direction leading from the partition door to the wound. There were no powder-marks on the pillow.

The nature of the wound, its location in the back part of the head, the position of the body, the slits in the pillow, the absence of powder-marks, and the conduct and statement of the defendant after the shooting furnished sufficient evidence of the fact that the deceased was killed by a shot from the defendant's gun fired with criminal intent.

2. The court in its instructions read to the jury section 1105 of the Penal Code, which is as follows: ''Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.''

It is claimed that this was error. The position of the defendant is that this instruction is not applicable, except where the defendant admits the intention to kill and claims that it was in self-defense, and that it was harmful because of the phrase ''the commission of the homicide by the defendant being proved,'' which, it is said, constituted an intimation or statement by the court that the fact that the defendant intentionally fired the shot had been proven.

It is not the law that this instruction is applicable only where the justification offered is that the killing was in self-defense. It applies in any case where the defendant offers evidence in mitigation of the offense,—that is, to reduce the degree of the crime; or in justification, as that it was in self-defense or in the lawful execution of a death sentence; or in excuse, as that it occurred by accident and not design. The defense in this case was that it occurred by accident, and this, if proved, would have been an excuse for the homicide. The instruction was therefore applicable to the case.

The phrase objected to was not inserted in the instruction as a statement by the court that the commission of the homicide by the defendant had been proved. It was meant as an expression of a condition or event, upon which the succeeding part of the instruction would become applicable, and that is its true rhetorical meaning when considered in connection with the text. Its signification is the same as if the sentence began thus, ''When, upon a trial for a murder, the commission of the homicide by the defendant has been proved,'' etc. Thus understood, it does not constitute a statement of the fact by the court. In *People* v. *Tapia*, 131 Cal. 647, [63 Pac. 1001], this instruction was given with some additions declaring the extent of the burden of proof cast upon the defendant. It was criticised in that case upon the ground that the jury might have understood the above-quoted phrase as a declaration that the fact referred to had been proved. The defendant in that case did not attempt to mitigate, justify, or excuse the homicide, but denied that he had committed the act. Consequently, it was said, ''the instruction should not have been given, for it was entirely inapplicable.'' The evidence that Tapia did commit the homicide was said to be very weak and unsatisfactory. It

was in view of this condition of the evidence and of the inapplicability of the instruction to the case that the court considered that the jury might have misconstrued the expression as a statement by the court with regard to the sufficiency of the evidence.

In the present case the instruction could not have been so understood by the jury. Other instructions repeated frequently the proposition that the jury were the exclusive judges of the facts. They were told that they must not decide upon a preponderance of the evidence, but that the prosecution must show the defendant's guilt and every fact essential to a conviction beyond a reasonable doubt, and must prove the *corpus delicti* by competent evidence beyond reasonable doubt, before they could consider the admissions of the defendant; that if they had a doubt whether or not Pearse was killed by the accidental discharge of the defendant's gun, they must acquit the defendant; that the burden of proof was upon the prosecution, and if upon the proofs there was a reasonable doubt of his guilt remaining the defendant must be acquitted. In view of these instructions it would be impossible for any jury of ordinary intelligence to have supposed that the instruction complained of was intended to state to them that the fact that the defendant had committed the homicide had been proven. (See *People* v. *Hawes,* 98 Cal. 653, [33 Pac. 791].)

3. Another instruction stated that "A witness willfully false in a material part of his testimony is to be distrusted in others." That this is a principle of the law of evidence, and one of the rules by which the court or jury must be guided in the consideration of the weight of evidence, cannot be disputed, for it is made so by statute. (Code Civ. Proc., sec. 2061.) It has been repeatedly held by this court that the giving of such an instruction is not cause for reversal, and we adhere to the precedents thus made. (*People* v. *Dobbins,* 138 Cal. 694, [72 Pac. 339]; *People* v. *Tibbs,* 143 Cal. 103, [76 Pac. 904]; *People* v. *Wardrip,* 141 Cal. 229, [74 Pac. 744]; *People* v. *Farrington,* 140 Cal. 656, [74 Pac. 288]; *People* v. *Wong Bin,* 139 Cal. 65, [72 Pac. 505]; *People* v. *Wilder,* 134 Cal. 184, [66 Pac. 228]; *People* v. *Kelley,* 146 Cal. 123, [79 Pac. 846].)

4. Upon a former trial for the same charge the defendant was convicted of murder of the first degree with the penalty

of imprisonment for life. A new trial was granted upon his own motion. It is now claimed that where there is a charge of murder of the first degree and a conviction of murder of the first degree with the penalty of imprisonment for life such judgment is a virtual acquittal of the character of murder sufficiently atrocious to justify the death penalty and is a bar to the infliction of the death penalty upon a retrial of the same charge. There is no foundation for such claim. It has been held that a conviction of murder of the second degree upon the trial of a charge of murder of the first degree is no bar to a subsequent conviction of the higher degree upon a retrial of the same case granted upon defendant's motion. (*People* v. *Keefer,* 65 Cal. 235, [3 Pac. 818]; *People* v. *Carty,* 77 Cal. 216, [19 Pac. 490]; *People* v. *Gordon,* 99 Cal. 232, [33 Pac. 901].) Upon this exact point we need express no opinion. The discretion given to the jury to mitigate the punishment upon a conviction of murder in the first degree, and inflict imprisonment for life only, does not, after such a verdict, divide that degree of murder into two degrees, but merely reduces the punishment. The mere substitution of imprisonment for life for the death penalty is not a determination that any element of murder of the first degree is lacking. On the contrary, such a verdict cannot be given until all the facts necessary to constitute that degree of murder are established. The former conviction was not an acquittal of the first degree of murder nor of any degree thereof. The instruction asked by the defendant to the effect that it was a bar against the infliction of the death penalty was properly refused.

5. A photograph of the front room of the Pearse cabin, taken six days after the homicide, was admitted in evidence after proof that the articles shown therein, including a shotgun lying on the floor, were respectively in the same position as when the body of Pearse was found the morning after the homicide. It is claimed that there was some uncertainty in the evidence introduced as a foundation for the introduction of this photograph, as to whether the gun was in exactly the same position when the photograph was taken as it was when first found after the shooting, and hence it is contended that the admission of the photograph was error. The theory of the defense was that after the discharge of

the gun in defendant's hands he placed it on the floor of the front room in front of the bed, and the defendant so testified. There was nothing in the case which made its exact position at all important. A witness who saw it when first found testified that the photograph showed it in practically the same place. It was admitted as a diagram or illustration. The ruling was proper, and is sustained by the following decisions: *People* v. *Crandall*, 125 Cal. 132, [57 Pac. 785]; *People* v. *Phelan*, 123 Cal. 564, [56 Pac. 424]; *People* v. *Figueroa*, 134 Cal. 161, [66 Pac. 202]; *People* v. *Mahatch*, 148 Cal. 200, [82 Pac. 779].

6. The deposition of Mae Pearse, the daughter of the deceased, taken at the preliminary examination of the defendant, was admitted at the trial over his objection that there was no sufficient proof that she could not with due diligence be found within the state. A witness testified that he knew that Mae Pearse was at the time of the trial in the home of the Boys and Girls' Aid Society in Portland, Oregon. Another witness, who was a relative of hers, testified that he knew her; that to the best of his knowledge she was in Portland, Oregon; that it was nine or ten months since he had heard from her, and that at that time she was in the Boys and Girls' Aid Society in Portland, and that the chief of police of Portland informed him of that fact. The sheriff's return on a subpœna showed that she was not found in Sonoma County. This evidence was somewhat weakened on cross-examination by showing that the relative's testimony as to her presence in Portland, Oregon, was based, in part at least, upon information received from the chief of police, and that the witness who testified positively that she was in Oregon had not known her while she was in California. Other circumstances were given, however, and the evidence as a whole was sufficient to sustain the decision of the court that she was absent from the state at the time of the trial and could not be produced as a witness. (*People* v. *Lewandowski*, 143 Cal. 576, [77 Pac. 467]; *People* v. *Reilly*, 106 Cal. 650, [40 Pac. 13].) At the time the deposition was read the whole of the evidence to show her absence had not been produced. This, however, was merely a matter of the order of proof, which is always within the discretion of the court, within reasonable limits. The subsequent proof upon

the subject cured any error that might have been committed in admitting the deposition before the foundation was fully laid.

No other objections to the regularity of the proceedings are made by the counsel for the defendant, and upon an independent examination of the record we perceive no error committed by the court against the defendant. The trial seems to have been in all respects fair and regular.

The judgment and order are affirmed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., McFarland, J., and Beatty, C. J., concurred.