[Crim. No. 283.   Third Appellate District.—February 10, 1915.]

THE PEOPLE, Respondent, v. ROGER CLAPP, Appellant.

CRIMINAL LAW—MURDER—CONFLICTING EVIDENCE—QUESTION FOR JURY. In a prosecution for murder where the evidence was conflicting as to whether or not the defendant acted in self defense, the question was one for the jury to determine and its verdict finding the defendant guilty of manslaughter will not be disturbed on appeal.

ID.—EVIDENCE—PHOTOGRAPH OF SCENE OF HOMICIDE—ADMISSIBILITY OF. In such a case, a photograph, taken of the scene of the homicide showing the engine and tender upon which the crime was committed and the body of a person posed in the position which there was evidence tending to show was the position of the deceased after he fell to the ground, was admissible as a diagram for the purpose of illustration only and not as evidence of what in fact occurred.

ID.—INSTRUCTIONS—INTENT—DEGREES OF MURDER—WHEN INSTRUCTION NOT PREJUDICIAL.—In such a case where the court instructed the jury, "Although the jury may believe from the evidence beyond a reasonable doubt that the defendant without justifiable cause or excuse, as explained in these instructions, killed the deceased, still if you entertain a reasonable doubt whether the killing was willful, deliberate, and premeditated, or whether the fatal wounding was done with deliberate intent upon the part of the defendant, then you should find him guilty of murder in the second degree," which instruction was one of a series defining the degrees of murder and distinguishing manslaughter from murder, inasmuch as the jury found the defendant guilty of manslaughter, he would not have been prejudiced by any error, if error there was, in this instruction.

ID.—EVIDENCE—RULE OF COMPANY AS TO PERSONS RIDING ON TRAINS—
IRRELEVANCY OF.—In such a case, where the conflict between the
deceased and defendant occurred on the engine of a railroad train,
there was no error in excluding from evidence a rule of the com-
pany offered by defendant that, "No person will be permitted to ride
upon an engine, or in baggage, mail or express cars (except em-
ployees in discharge of their duties)," where it appears without
dispute that the deceased in going aboard the engine was not in dis-
charge of his duty but did so to continue a quarrel with the defend-
ant that had begun theretofore.

ID.—ARGUMENT—MISCONDUCT OF DISTRICT ATTORNEY—WHEN NOT PREJU-
DICIAL.—Misconduct on the part of the district attorney in such
a case in referring in his argument to the fact that the defendant
knew the deceased was a good man, the court having sustained ob-
jection to evidence offered by the people to show the good character
of the deceased for peace and quiet, was not prejudicial, where the
court during the argument admonished the jury not to consider the
statement of the district attorney and not to allow it in any way to
enter into their deliberations, as it must be presumed that the jury
obeyed the instruction of the court.

APPEAL from a judgment of the Superior Court of
Nevada County and from an order denying a new trial.
George L. Jones, Judge.

The facts are stated in the opinion of the court.

C. F. McGlashan, and L. P. La Rue, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones,
Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was charged with the murder
of Albert A. Taylor, committed in the town of Truckee, on
June 9, 1914. . He was convicted of manslaughter. His
motion for a new trial was denied and he was thereupon sen-
tenced to imprisonment at San Quentin for the term of seven
years. He appeals from the judgment and from the order
denying his motion for a new trial.

Defendant was an engineer in charge of a switch engine at
the railroad yard of the Southern Pacific Company at Truckee.
Deceased was yardmaster at the same place and both were in
the employ of the Southern Pacific Company.

1. The evidence was that defendant was a roomer at de-
ceased's house and that, prior to the day of the homicide, their

relations had been friendly. They had some disagreement arising out of the switching of cars, on the morning of June 9th, which culminated in an altercation on defendant's engine, deceased having gone aboard the engine in anger where a somewhat violent quarrel ensued, deceased apparently the aggressor. He left the engine, however, and the parties did not come to blows. This was about seven o'clock in the morning. Later, about nine o'clock, a controversy arose between them which grew out of a collision of cars caused by defendant backing his engine too rapidly. He claimed that he was obeying the signals of the yardmaster and the latter claimed that defendant was violating them. High and angry words and irritating epithets passed between them and deceased jumped into the cab of the engine, going toward defendant in a threatening manner, but before he reached defendant, the latter shot deceased, the bullet entering the head just below the left eye, passing through the brain—a mortal wound from the effect of which he fell back out of the cab to the ground. Three separate wounds were disclosed by the autopsy.

Witness Thorp testified that he was standing near the lower end of the engine tender and saw and heard what took place; that, from where he stood, his view of defendant was obstructed by the frame work of the cab after deceased entered it, but he saw deceased get on to the engine and heard the shot immediately after he had entered the cab. He testified: "I was standing right here, and I heard the crack of the gun, and he fell out backwards. Q. As I understand you, the moment that he passed out of your view, you heard the shot of the gun and he fell out? A. Yes. Q. Then what occurred? A. There was three or four shots fired into the body, that is, at the body as it lay on the ground. Q. Where were those shots fired from? A. Right from the engineer's cab window. Q. From the side-window? A. Yes, sir, out this way and down towards the body on the ground. Q. Did you see any shots fired? A. I could see the gun in the man's hand, yes, sir, and the fire from the gun, the smoke. Q. The first shot, did you see that? A. No, sir, I didn't see that, that was shot around the cab. Q. What about the other shots? A. The other shots were fired out of the cab and from the outside and I could see the gun then. Q. Could you tell who did the shooting? A. Yes, sir. Q. Who was it? A. Mr. Clapp, the engineer."

There was testimony that deceased had gloves or mitts on his hands at the time and, so far as appears, he was not armed. There was evidence that deceased had been in some trouble with the men at other yards of the company and defendant had been told of it and cautioned "to look out for him," that he was "a dangerous man," and defendant testified that he believed his life was in danger when deceased came toward him and that he shot him to save his own life. Defendant admitted that he fired three times but testified that none of the shots was fired after deceased fell from the cab. The evidence on this point was conflicting and an effort was made to discredit Thorp's account of the tragedy. The jury, by their verdict, acquitted defendant of murder, but they found from the evidence that he was not justified in killing deceased. Indeed, whether the killing was justified was the vital question for their consideration. The office of a reviewing court in a case such as this is very clearly stated in *People v. Emerson,* 130 Cal. 562, 563, [62 Pac. 1069] : "The principal ground of the appeal is that the verdict is contrary to law and the evidence, and upon this point counsel contend that all the evidence—that introduced by the prosecution no less than the evidence of the defendant himself—shows clearly and without conflict that the killing (which is admitted) was done in necessary self-defense, or at least under circumstances which negative the existence of any deliberate purpose on the part of the defendant to take the life of the person slain. Necessarily, this contention as to the absence of any conflict in the evidence must be made good in order to sustain the appeal upon the ground stated; *for if the evidence which bears against the defendant, considered by itself, and without regarding conflicting evidence, is sufficient to support the verdict,* the question *ceases to be one of law*—of which alone this court has jurisdiction—and becomes one of *fact* upon which the decision of the jury and the trial court is final and *conclusive."*

As was said in *People* v. *Rongo,* 169 Cal. 71, [145 Pac. 1017] : "Undoubtedly the defendant's own story exculpates him, but it was for the jury to say whether or not that story should be believed." See, also, *People* v. *Burke,* 18 Cal. App. 72, 79, [122 Pac. 435]. There was sufficient evidence to justify the verdict.

2. A photograph was taken of the scene of the homicide showing the engine and tender and the body of a person posed in the position which there was evidence tending to show was the position of deceased after he fell to the ground. This photograph was admitted as a diagram for the purpose of illustration only and not as evidence of what in fact occurred. The following cases are authority for the use of the photograph for the purposes as limited by the court: *People* v. *Phelan*, 123 Cal. 551, 564, [56 Pac. 424]; *People* v. *Crandall*, 125 Cal. 129, 133, [57 Pac. 785]; *People* v. *Mahatch*, 148 Cal. 200, 203, [82 Pac. 779]; *People* v. *Figueroa*, 134 Cal. 159, 161, [66 Pac. 202]; *People* v. *Grill*, 151 Cal. 598, [91 Pac. 515].

3. The court gave the following instruction: "Although the jury may believe from the evidence beyond a reasonable doubt that the defendant without justifiable cause or excuse, as explained in these instructions, killed the deceased, still if you entertain a reasonable doubt whether the killing was willful, deliberate, and premeditated, or whether the fatal wounding was done with deliberate intent upon the part of the defendant, then you should find him guilty of murder in the second degree.

This instruction was one of a series defining the degrees of murder and distinguishing manslaughter from murder. Inasmuch however, as the jury found defendant guilty of manslaughter he could not have been prejudiced by any error, if error there was, in the instruction complained of. (*People* v. *Ryan*, 152 Cal. 364, 368, [92 Pac. 853].)

4. In the course of the trial defendant offered in evidence a rule of the railroad company reading as follows: "No person will be permitted to ride on an engine, or in baggage, mail or express cars (except employees in discharge of their duties)." Upon objection the court refused to admit the evidence as immaterial and irrelevant. Defendant contends that deceased was charged with knowledge of this rule and that going aboard of the engine in violation of it had a tendency to show that he intended to attack defendant. The rule would seem to apply particularly to persons other than employees and while it may also apply to the latter unless their duties require them to board an engine or baggage or mail car, we cannot see that it was relevant or that defendant was prejudiced in being deprived of this evidence. Deceased did not

enter the cab of the engine under any claim of right to do so and the evidence was undisputed that in going aboard the engine it was not in the discharge of his duty but was to continue the quarrel that had begun between the two while deceased was standing on the ground. The existence of the rule or its violation, or the relative rights of the two men to be on the engine under it could not by any possibility, it seems to us, have had any tendency to show the intent which impelled deceased to board the cab. (*People* v. *Conkling,* 111 Cal. 618, [44 Pac. 314].)

5. Testimony was offered by the people to show the good character of the deceased for peace and quiet. Objection was sustained and the evidence excluded. In his address to the jury the district attorney said: "He (defendant) knew that Taylor was a good man. He knew everything good about Taylor and when he says he knew Taylor was a dangerous man he is telling you absolutely a thing that is not so. I offered to prove to this court that the reputation of Mr. A. A. Taylor in the town of Truckee was good." Whereupon the following took place:

"Mr. La Rue. (Interrupting): Just a minute, Mr. Arbogast. We note an exception to the remark of the district attorney concerning this matter.

"The Court: The jury will not in any way consider the statement just made by the district attorney, and not allow it in any way to enter into their deliberations as to the guilt or innocence of the defendant.

"Mr. Arbogast: It is the truth, your honor.

"The Court: The evidence was offered and objected to and the objection was sustained and no further reference should be made to that matter.

"Mr. Arbogast: I am perfectly satisfied on that proposition.

"The Court: No further reference should be made to it by either side. When evidence is refused admission that forecloses any further reference to the matter and the jury will not consider that statement whatsoever."

The admonition of the court to the jury not to consider the statement of the district attorney and "not to allow it in any way to enter into their deliberations," we must presume, was obeyed by the jury and hence no prejudice came to defendant. (*People* v. *Burke,* 18 Cal. App. 72, [122 Pac. 435]; *People* v. *Prayther,* 134 Cal. 439, [66 Pac. 589, 863].)

We discover no prejudicial error in any of the rulings of the court and none in the instructions given.   There was evidence sufficient to justify the verdict of manslaughter.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 8, 1915.