THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* SATURNINO TORRES ECHEVARRÍA, Defendant and Appellant.

No. 15387. Argued June 5, 1953.—Decided July 22, 1953.

*Ernesto Ramos Antonini* for appellant: *José Trías Monge, Attorney General,* and *Jaime García Blanco, Special Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On the night of April 6, 1948, at the place called "El Canódromo," at Muñoz Rivera Park, San Juan, Puerto Rico, Saturnino Torres Echevarría killed David H. Daniel, a soldier of the United States Army with a pistol, and inflicted three serious wounds on the civilian Luis Antonio Matos Espada. As a result of these events, Saturnino Torres Echevarría was prosecuted before the former District Court of San Juan, for the offenses of Murder in the First Degree, Assault with Intent to Commit Murder, Carrying Weapons and for a violation of the Registration of Firearms Act. (Act No. 14 of 1936(2), p. 128.)

The felonies were jointly tried before a jury and the misdemeanors were submitted to the judge who presided at the trial upon the same evidence adduced in the cases for Murder in the First Degree and Assault with Intent to Commit Murder.

The jury found the defendant guilty of Murder in the Second Degree and of Assault with Intent to Commit Murder. The presiding judge found him guilty of Carrying Weapons and of a violation of the Registration of Firearms Act. Upon being sentenced in each and every case he appealed to this Court,[1] charging the trial court with the following errors:

"First Error: The trial court erred upon admitting in evidence several photographs of the victim in the case for murder which were presented by the prosecuting attorney for the purpose of unduly influencing the jury.

"Second Error: The lower court erred upon admitting in evidence several photographs, taken a few days after the occurrence, which represented imaginary positions of the parties, and in permitting Matos Espada, a witness, to be questioned as to those photographs prior to their admission in evidence.

---

[1] Although from the record sent to this Court it appears that the defendant appellant is on bail given for each of the cases in which he was sentenced, the record does not show that defendant has appealed from the sentence for Carrying Weapons.

"Third Error: The District Court (now Superior) erred in permitting the prosecuting attorney to examine the defendant, over the vigorous objection raised by the defense, regarding the testimony given by defendant on the night of the occurrence, without following the provisions of the Law of Evidence.

"Fourth Error: The trial court erred upon permitting the prosecuting attorney to address the jury by referring to evidence not presented or admitted in evidence during the prosecution.

"Fifth Error: The verdict is contrary to facts and law."

■ The first error assigned was not committed. While testifying before the trial court, the medical expert Dr. George D. Penick identified several photographs showing Daniel's corpse. This doctor performed the autopsy on the corpse. When the identified photographs were offered in evidence, the court, over the objection of the defense, admitted only those which showed the place of entrance of one bullet and various erosions in Daniel's body. Defendant urges that the prosecuting attorney had no legitimate purpose when introducing those photographs in evidence but to prejudice the minds of the jury and that their admission injured his rights. He is not correct. The photographs were admissible in evidence. The bare fact that a photograph may influence the jury against defendant does not require its exclusion, provided it has been offered in evidence for a legitimate purpose of the prosecution. *People* v. *Zayas*, 65 P.R.R. 504; *People* v. *Rivera*, 69 P.R.R. 500, 502, and *People* v. *Galarza*, per curiam decision of December 29, 1951. The photographs admitted by the trial court showed the entrance of the bullet and the erosions that the dead man had in his face. That was a legitimate purpose of the prosecution when considered in connection with the rest of the evidence presented by both parties. We must not be unmindful of the interest shown by the jury and by the defendant himself to establish the height of the alleged hole left by the bullet at the kiosk's door, the height of the victim, etc., *People* v. *Lee Nam Chin*, 166 Cal. 570; *People* v. *Cole-*

*man*, 50 Cal. App. 2d 592. On the other hand, such photographs made no grotesque or impressive display. There being no reason to the contrary, we fail to see how they could injure the fundamental rights of defendant.

■ Neither was the second error committed. This assignment refers to the action of the trial court in admitting in evidence various photographs of the place of the occurrence. Some of these photographs represent the reproduction of various scenes, such as the position in which witness Luis Antonio Matos Espada found Daniel's corpse, the way in which he carried him to defendant's kiosk, the position in which he left deceased leaning against the kiosk, etc. When the prosecutor showed these photographs to Luis Antonio Matos Espada for identification he had already testified broadly as to what had happened on the night of April 6, 1948. He had given a verbal description of the place, as well as his role in the occurrence, his actions and movements on that night, the things he observed, etc. Such photographs were clearly admissible because they represented the place of the occurrence and because they served to illustrate Matos Espada's testimony. *People* v. *Márquez*, 67 P.R.R. 303; *People* v. *Perkins*, 8 Cal. 2d 502; *People* v. *Grill*, 151 Cal. 952; *People* v. *Sliscovich*, 193 Cal. 544, 226 Pac. 611; *People* v. *Clapp*, 26 Cal. App. 523, 147 Pac. 469.

■■ The third error assigned relates to an incident which occurred during the cross-examination of defendant by the prosecuting attorney. Appellant urges that the latter, notwithstanding the objections of the defense, did not observe the rules of the Law of Evidence while trying to impeach the defendant's testimony. The defense objected to the question: "Try to remember if you told me something different from what you told me at the beach?" The judge considered that the question was incomplete and the prosecuting attorney then put it this way: "Try to remember if at any other place in the world you have told me something different from what you told me at the beach when this pis-

tol was taken out of the sea?" The court admitted the question and the defendant answered that he had testified twice before the district attorney, once at the kiosk and its surroundings and the other time at police headquarters. The prosecuting attorney insisted, by a series of questions, that the witness answer whether, in any other part of the world other than the beach, he had told him that the pistol had fallen in the midst of a shrubbery but that he could not point to the place where it fell. The witness said he did not remember.

We may go along with appellant's argument to the effect that the rules of the Law of Evidence were not strictly observed in such interrogation. In the case of previous statements inconsistent with his present testimony, the circumstances of time, places and persons present must be related to the witness. Section 245 of the Code of Criminal Procedure, 1935 ed., § 159 of the Law of Evidence. However, the error, if committed, is not reversible. Appellant has failed to show any injury to his substantial rights and no prejudice being shown, we will not disturb the judgment appealed from. *People* v. *De Jesús*, 70 P.R.R. 36; *People* v. *Rosario*, 68 P.R.R. 526. Moreover, the prosecuting attorney finally showed the defendant and his attorney a written statement of the defendant, and he was given ample opportunity to deny or explain any contradiction or inconsistency existing between that statement and his oral testimony. This being done, the written statement was offered and admitted in evidence to impeach his oral testimony. By such proceeding the provisions of the law were generally observed. *People* v. *Lebrón*, 61 P.R.R. 634.

■ The fourth assignment charges the trial court with error in allowing the prosecuting attorney in his address to the jury to make some statements concerning evidence which was not introduced nor admitted during the prosecution. The defense established for the record that while the district attorney was addressing the jury he said, pointing at his

desk: "I have some proof there that I would have introduced but which I did not because the Rules of Evidence forbid it. I have some proof there that I would have introduced in evidence and would have explained, but I can not do so, for to do it I would have to take the witness stand and it is not good practice for an attorney to take the witness stand in his own case." Even disregarding the fact that this remark of the prosecuting attorney refuted the argument used by the defense in connection with some evidence which was not presented or admitted either by the court, and as to which the attorney for defendant said "The prosecutor did not take the stand to deny that he found the lead and the caps in the kiosk. He refused to give them to me." the judge cured any possible error or prejudice against the defendant, when immediately he gave the following instructions to the jury:

"Gentlemen of the jury, as to these interruptions made while the prosecutor was arguing his case, including the statements made in court before the case was closed, where defendant's attorney asked the prosecuting attorney to give him the two shells and the latter agreed to do so provided the defense would ask for all the evidence he had there with him, and then neither of them presented the shells in evidence, and concerning also the argument by the defense to which the prosecuting attorney now refers, as well as to what the prosecuting attorney just said, I instruct you to disregard anything that has not been admitted in evidence by this court. You must disregard anything that the prosecuting attorney may have in that package or in any other place which has not been presented in evidence; however, those objects and any other evidence that could have been produced by a party but was not so produced, although able to do so, are to be considered as evidence wilfully suppressed and thus adverse to the party who could have produced it."

Appellant cites in support of his contention the case of *People* v. *Marchand*, 53 P.R.R. 640. The facts in that case are distinguishable from those at bar. There, the district attorney, in addressing the jury, made statements as to facts

which were inadmissible in evidence, and were so prejudicial that they could not be properly cured by an instruction. In the case at bar, however, the prosecuting attorney said nothing as to the kind of evidence he had not produced and, furthermore, the timely instruction given by the judge to the jury safeguarded the defendant's rights, curing any possible prejudice which the words of the prosecuting attorney might have caused, especially the instruction as to the effect of wilfully suppressed evidence. See *People* v. *Ojeda*, 66 P.R.R. 399; *People* v. *Zayas*, *supra*; *People* v. *Montes*, 64 P.R.R. 306; *People* v. *Yera*, 60 P.R.R. 796.

The fifth assignment impeaches the verdicts of the jury, alleging that they are contrary to law and to the evidence. This compels us to summarize the evidence. The evidence for the People was to the effect that defendant appellant owned a small kiosk at the place called "El Canódromo" at Muñoz Rivera Park, San Juan. At about 11:30 P. M. on April 6, 1948, appellant, by firing a pistol, injured a soldier of the United States Army named David H. Daniel, causing his death. Shortly afterwards as Luis Antonio Matos Espada passed by, he found Daniel's corpse and dragged him to defendant's kiosk, against which he leaned the body in a seated position. While doing this Matos Espada knocked against the kiosk. Then the defendant asked from within the kiosk, "What's going on there?", to which Matos Espada answered "It's the police." The defendant came out of the kiosk pistol in hand and walked towards Matos Espada. The latter told defendant that a wounded soldier was lying there and lighted a match so that he could be seen. The defendant saw it and then walked away for a moment returning later to Matos Espada saying "Go away and say nothing about this." Matos Espada left the place and when he had walked a distance of six feet defendant shot at him several times, inflicting three wounds produced by the bullets as a result of which he fell down. Having thrown the pistol out to the sea defendant went to the guard's office of Muñoz

Rivera Park, where he met the chief of the guards, Ramón A. Rivera. Another guardsman was also present. Addressing Rivera defendant said "Arrest me and save my life for I have killed two men at my kiosk." He was arrested and when the police came, Rivera told them in the presence of the defendant, "This is the man charged with the crime" appellant remaining silent.

The evidence for the defense tended to show the following: Defendant's kiosk had been the object of various burglaries prior to the day of the occurrence. For that reason, defendant, who then lived at Villa Palmeras in Santurce, decided to sleep overnight in his kiosk. The night of the occurrence he went to bed at about 10:00 P. M. An hour and a half had elapsed when he woke up as he heard some-one trying to open the kiosk's door. Overcome by fear and panic he took his pistol and fired two shots towards the door. He then started to dress up when suddenly he heard stones striking against the zinc and the kiosk's window. The cross-bar of the window fell and he went outside through it, when a young man who was in the surroundings threw stones at him. He fired at this youngster who fell down. It was then that he noticed that there was a dead man lying in front of the kiosk's door. He then threw the pistol into the sea and decided to give himself up, meeting two guards at the park, one of them called Rosendo, to whom he said that he had fired from within the kiosk at two men who had tried to open the door and had killed one of them. In order to protect him, the guards took him to their office and from there the district attorney and the police took him to the police head-quarters at Puerta de Tierra.[2]

Defendant appellant urges that the evidence did not show that he had killed Daniel with malice aforethought; that defendant did not even know the victim and had never quarreled with him and therefore defendant could have no inten-

---

[2] In making the summary of the evidence we have omitted those facts which have no bearing in deciding this fifth assignment of error.

tion to kill him. Defendant's contention is without merit. We have seen that the jury found defendant-appellant guilty of murder in the second degree for the death of Daniel. In the case of *People* v. *Méndez,* 74 P.R.R. 853, 864, we held:

" . . . In brief, as to the aspect under discussion, murder in the first degree includes the elements of deliberation and specific intent to kill. In the case of murder in the second degree, malice aforethought, without the specific deliberate intent to kill is enough, that is, without the intent to do an act resulting in death, but in virtue of the purpose to cause bodily injuries which may probably cause death, and actually cause death, without the person causing such injuries having the direct, specific and deliberate purpose to kill. The decisions of this Court have determined that murder in the first degree is characterized by the deliberation and specific intent to kill, unlike murder in the second degree. *The People* v. *Lasalle,* 18 P.R.R. 410, 412; *People* v. *Carrión,* 35 P.R.R. 828; *People* v. *Garcés,* 29 P.R.R. 961; *People* v. *Torres,* 34 P.R.R. 626; *The People* v. *Crespo,* 21 P.R.R. 285; *People* v. *Belardo,* 50 P.R.R. 491, *People* v. *Rosario,* 67 P.R.R. 346."

There is no controversy as to the fact that the death of Daniel came as the result and consequence of the shots fired by defendant appellant. He admitted so. Therefore, it was incumbent upon defendant to prove the mitigating circumstances or whatever might justify or excuse the homicide, unless, of course, they appear from the People's proof. Section 247 of the Code of Criminal Procedure, 1935 ed.; *People* v. *Rosado,* 17 P.R.R. 417; *People* v. *Ortiz,* 62 P.R.R. 246, *People* v. *Knapp,* 71 Cal. 1. On a trial for murder the People is not bound to offer direct evidence of malice and premeditation. *People* v. *Mahatch,* 148 Cal. 200; 82 Pac. 779; *People* v. *Copley,* 32 C. A. 2d 74; 89 P. 2d 160, as these may be inferred from the manner in which a deadly weapon is used. *People* v. *Román,* 70 P.R.R. 48; *People* v. *Alamo,* 62 P.R.R. 119. Neither had the district attorney to prove the motive of the crime, *People* v. *Aranda,* 83 P. 2d 928 or the existence of differences, quarrels or enmity between the

defendant and his victim. *People* v. *Cornett*, 61 C. A. 2d 98. However, as the *Fiscal* correctly states in his report to this Court:

"In the present case, the defendant himself sets forth the motives that led him to commit the crime. Further, the circumstances attending the killing, his conduct and behavior show the elements of malice and premeditation in the homicide, which was committed without any cause or excuse whatsoever, no considerable provocation appearing and showing in defendant an abandoned and malignant heart. Worried and upset by the alleged burglaries committed in his kiosk or business, armed with a pistol, he decides to sleep therein and so defend his property. Suddenly, he wakes up excitedly when he hears someone 'fumbling' with the door and, as he himself says, in order to 'scare' him away and defend his property, he aims and fires towards the door, (T. of E. p. 232). Frightened, with no considerable provocation, with no excuse whatsoever, without even considering the danger to which he might have been exposed, he aims and fires towards the door from where the noise, which he alleges awoke him, came.

"From the act of firing towards that door, —knowing that he might bring, as it did, the death of a human being, —malice should and must be presumed. *People* v. *Cruz*, 49 P.R.R. 637, 643. By firing towards that door, believing and fearing that a man was there, the death of the latter can not be considered as an accident but a premeditated and criminal act. Every person intends and is responsible for the natural consequences of his own acts. *People* v. *Colón*, 65 P.R.R. 714, 720; *Stovall* v. *State*, 32 S. E. 586."

In the case of *People* v. *Cruz*, 49 P.R.R. 637, we held at p. 643:

"It is true that here, as we have already stated; not only the intention to kill the deceased was not shown, but the intention to kill somebody else in particular was not shown either. However, as it has been proved that the defendant, in shooting as he did while surrounded by human beings, knew that he might kill, as he did kill, one of them, the malicious and deliberate intention to kill is evident."

The case cited by appellant—*People* v. *Ayala*, 52 P.R.R. 699—can have no bearing on the facts involved in the present one. We held in that case:

"Where the killing is a result of pure accident and there was no purpose to injure, or aim in the direction of the deceased, a court should give the jury the opportunity to find the defendant guilty of manslaughter or perhaps so limit the verdict."

The present case is not one of a mere accident, nor can it be denied that there was the intention of injuring someone [the alleged burglars] or that there was no intention of aiming towards them.

On the other hand, the evidence for the defense did not show, in such a way that the jury had to believe it, that Daniel intended to commit or was about to commit a burglary in defendant's kiosk when the latter fired at him producing his death. Under such circumstances, the jury was justified in delivering a verdict of murder in the second degree and such verdict is not contrary to the evidence or to the law.

As regards the case for assault with intent to commit murder defendant-appellant confines himself to alleging that he acted in self-defense, of his life and his property. Again we do not agree. The evidence believed by the jury supports the contrary. Therefore, his contention lacks merit.

■ The appeal taken from the sentence imposed upon defendant-appellant for carrying weapons, will be dismissed. Since the notice of appeal was not included in the transcript of the record, this Court lacks jurisdiction to decide the appeal. *People* v. *Lorenzo*, 18 P.R.R. 952; *People* v. *Viñales*, 19 P.R.R. 106; *People* v. *Olivencia*, 20 P.R.R. 56.

■ We shall now consider the appeal taken from the judgment rendered against this defendant in the prosecution for a violation of the Registration of Firearms Act. It is an uncontrovertible fact that on April 6, 1948 defendant-appellant had a pistol in his possession and under his control without having registered it pursuant to the aforesaid law. The pistol was seized and since defendant was convicted for

its unlawful carrying, he shall forfeit it. In *People* v. *District Court*, 70 P.R.R. 644, we held that when § 7 of the Registration of Firearms was amended,—Act No. 14 of July 8, 1936—by Act No. 44 of September 27, 1949 (Spec. Sess. Laws, p. 96), the Legislature granted an amnesty to all those persons having in their possession and under their control any firearm which had not been registered, in violation of the law, so that they could register them and it also provided for the dismissal of any pending action, as long as the defendant complied with the obligation of registering the firearm as requested by the statute. Subsequently, we held in *People* v. *Acevedo*, 70 P.R.R. 661, that in view of the decision delivered in *People* v. *District Court, supra,* the dismissal of the case against defendant Acevedo for a violation of the Registration of Firearms Act committed on November 11, 1948, should be ordered, it being unnecessary for the defendant therein to comply previously with the requirement of registering the firearm as requested by law, because, as long as he had already been found guilty of unlawfully carrying the weapon, he would forfeit it.

However, our decision in *People* v. *District Court, supra,* does not have the scope that we gave it in *Acevedo* case. In the former case we said that there were two circumstances which taken together showed that the legislative intent in approving Act No. 44 of 1949 was the dismissal of pending actions; that one of said circumstances was that this Court in *People* v. *Pérez,* 52 P.R.R. 161, construing Act No. 95 of March 12, 1937 (Sess. Laws, p. 231) which amend § § 7 and 9 of Act No. 14 of July 8, 1936, known as the Registration of Firearms Act, held that the repealing Act—whose § § 7 and 9 were substantially the same as §§ 7 and 9 of Act No. 44 of 1949—had the effect of dismissing pending actions; that the other circumstance was that the Minutes of the House of Representatives clearly show that the purpose of Act No. 44 of 1949 was the dismissal of all pending actions and to give every person who had not complied with the law an ample

opportunity to do so. The Minutes of the House of Representatives, insofar as pertinent recite:

"By virtue of this bill a new opportunity is given to all those persons who have those firearms unregistered in order that they register them without being prosecuted or sentenced therefor in any form whatever, *although there be an action against them,* and to forthwith proceed to the registration of the weapons. The object of this Act is that all weapons not registered, be registered, and this new opportunity is offered therefor to the violators of the Act."

It was in consonance with this clear purpose that we held in *People* v. *District Court, supra,* the following:

"We entertain no doubt that in the present case it was the legislative intent to. dismiss pending actions provided that the defendant comply with the obligation imposed on him by the law to register the weapon. The defendant is entitled to that opportunity."

Thus, we subjected the dismissal of pending actions to the previous compliance by defendant of the obligation imposed by the law as to the registering of the weapon.

In the case at hand defendant is in no condition to give previous compliance to said obligation as imposed by the law, nor was the defendant in the *Acevedo* case. The reason is obvious. Defendant was prosecuted and convicted for the unlawful carrying of said weapon and as a result he has forfeited it. Therefore, the legislative intent is not achieved by the dismissal of the case against this defendant for a violation of the Registration of Firearms Act. The dismissal of the case is in order only in those cases where the defendant has been prosecuted solely for violating the Registration of Firearms Act. In that way he is given an opportunity to comply with the law. The defendant in the present case does not fall within that rule. Therefore, the sentence imposed upon him will be affirmed and the case of *People* v. *Acevedo, supra,* insofar as it is in conflict with this decision, is to be considered overruled.

For the foregoing reasons, the sentences imposed upon defendant in the cases of Murder in the Second Degree, Assault with Intent to Commit Murder, and Violation of the Registration of Firearms Act will be affirmed and the appeal for Carrying Weapons is dismissed.