[Crim. No. 683.  In Bank.—February 21, 1901.]

THE PEOPLE, Respondent, v. RAMON TAPIA, Appellant.

CRIMINAL LAW—MURDER—SUFFICIENCY OF EVIDENCE—NEW TRIAL—DUTY OF TRIAL JUDGE—JURISDICTION.—Where the judge before whom a defendant convicted of murder was tried is convinced that the evidence was not sufficient to warrant the verdict, it is his duty to grant a new trial; and he ought not, in such case, to deny the new trial, and leave it to this court upon appeal to pass upon questions of fact, upon which the trial court alone has jurisdiction to pass. This court has appellate jurisdiction in criminal cases on questions of law alone, and cannot pass upon the insufficiency of the evidence unless, as matter of law, there is no evidence tending to support the verdict.

ID.—OPINION OF JUDGE—REVIEW UPON APPEAL.—The opinion of the trial judge is not properly a part of the record; and his action cannot be set aside merely because a wrong reason was given for it; yet where his opinion contained in the record shows that he ought to have granted a new trial for insufficiency of the evidence, although this court cannot say, as matter of law, that there was no evidence tending to support the verdict, the record will be closely scrutinized to ascertain errors of law, for which a new trial should be granted.

ID.—EVIDENCE — CORPUS DELICTI — ADMISSIONS OF DEFENDANT. — The *corpus delicti* involving all the elements of the crime, must be established independently of evidence which merely tends to connect the defendant with the crime charged; and the admissions or confessions of the defendant cannot be considered as evidence of the *corpus delicti*, nor used to establish any necessary element in the commission of the crime.

ID.—REFUSAL TO INSTRUCT AS TO CORPUS DELICTI—REQUEST SUBJECT TO CRITICISM—PREJUDICIAL ERROR.—Where, from the peculiar state of the evidence, it appears that the jury may have considered, and

probably did consider, evidence of the defendant's confessions in determining that the *corpus delicti* had been sufficiently proved, it was prejudicial error for the court to refuse wholly to instruct the jury as to the necessity for independent proof of the *corpus delicti;* and notwithstanding the fact that requested instructions on that point were subject to criticism, if they would not have prejudiced the prosecution, it was the duty of the court either to give them as requested, or to give them as correctly modified.

ID.—DUTY OF COURT AS TO INSTRUCTIONS—PARAMOUNT AND VITAL QUESTION.—It is the duty of the court, in charging the jury in a criminal case, to instruct them as to "all matters of law necessary for their information." Although, ordinarily, a judgment will not be reversed for want of full instructions upon points upon which no instruction is asked, yet the court is not justified in refusing to instruct at all upon a paramount and vital question in a case involving the life or liberty of the accused, merely because a particular form of instruction asked by defendant's counsel might be safely refused.

ID.—INAPPLICABLE INSTRUCTION—BURDEN OF PROOF—ASSUMPTION OF PROVED HOMICIDE—CASE OF DISPUTED HOMICIDE—ERROR NOT HARMLESS.—An inapplicable instruction as to the burden of proof of circumstances of mitigation, or that justify or excuse the homicide, proceeding upon the assumption that the commission of the homicide is proved, is not to be considered harmless in a case where the commission of any homicide is in doubt, and the only question in the case is as to whether the defendant committed a homicide.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

George H. P. Shaw, Nutt & Shaw, H. K. Heffleman, and Neale & Goodbody, for Appellant.

Tirey L. Ford, Attorney General, and Henry A. Melvin, for Respondent.

McFARLAND, J.—The defendant was convicted of murder in the first degree, and sentenced to life imprisonment. He appeals from the judgment and from the order denying a motion for a new trial.

The appellant is an Indian, evidently unlettered and ignorant. He was charged with the murder of one Jacob J. Veitinger,

who was a somewhat elderly man, and lived alone in a small house in the country. On July 28, 1899, his nearest neighbor, Mr. William Cooper, discovered that Veitinger's house had been burned down since the previous day, and found among the ruins the dead body of Veitinger. A great deal of his body had been entirely consumed by the fire; still, we think, it was sufficiently identified as the body of the deceased. But the evidence of the other facts necessary to make full proof of the *corpus delicti*—that is, that his death was caused by criminal means used by another person and not by his own act or by accident—was very slight. We hardly think that any jury would have found that a murder had been committed without certain evidence tending somewhat to connect appellant with the crime charged, and particularly without the testimony of another Indian, named Francisco (who was comparatively a stranger to appellant), to the effect that appellant had made a confession to him that he (appellant) killed the deceased. Apart from this alleged confession, the main evidence relied on by the prosecution consists of some testimony that tracks of a certain horse were discovered at a point not very far away from the burned house, and at other points within a few miles, and that the horse, although owned by another party, had been a few days before in the possession of appellant; some testimony that a purse found on appellant had been the property of the deceased; and some testimony that appellant had been seen carrying a gun which had been the property of the deceased. The testimony as to these matters was, to say the least, not very satisfactory, and, these matters if considered as proved, are not very convincing as to any of the facts necessary to appellant's conviction of murder.

There is in the bill of exceptions, regularly settled and certified, an opinion of the judge before whom the case was tried, given on denying the motion for a new trial, from which it certainly appears that he ought to have granted the motion. The judge examines the evidence in detail, and clearly shows that, in his opinion, it was not sufficient to warrant the verdict. He shows that the purse was not sufficiently identified as the purse of the deceased; that appellant was not identified as the person seen with the gun; and that the horse tracks do not

"cut a very material figure." As to the asserted confession to Francisco the judge says: "I do not see how anybody can possibly read that, or hear the man testify, and believe him at all. I do not give it a particle of credence. He is an enemy who is prosecuting the defendant. He is in jail himself. . . . . Then as to that confession—if I know anything about weighing evidence whatever—after reading the testimony, that bears external and internal evidence of falsity from beginning to end." He then speaks of the unreliability of the testimony of certain Indians who were hostile to appellant, and, imagining that Francisco was on trial for the murder of Veitinger, shows that the facts would make as strong a case against him as against appellant, and says: "Therefore, I say the evidence is unsatisfactory." But after showing clearly that the evidence in his opinion was not sufficient to warrant the verdict, he questions whether "my doubts amounted to such reasonable doubts as would warrant the court in setting aside the verdict on the ground of the insufficiency of the evidence"; and he concludes as follows: "I believe I shall deny the motion and let the supreme court pass on these questions." But "these questions" were questions of fact, over which the trial judge had full jurisdiction, while this court has appellate jurisdiction in criminal cases "on questions of law alone." As was said in *People v. Lum Yit*, 83 Cal. 130: "He [the trial judge], too, had to be satisfied that the evidence, as a whole, was sufficient to sustain the verdict; if he was not, it was not only the proper exercise of a legal discretion, but his duty, to grant a new trial." (See, also, *People v. Knutte*, 111 Cal. 453; *People v. Baker*, 39 Cal. 686; *People v. Flood*, 102 Cal. 330; *People v. Chew Wing Gow*, 120 Cal. 298.) The sufficiency of the evidence is a "question of law" only where the question is whether there is any evidence to support the verdict, or whether the evidence is so unsubstantiated as to practically amount to no evidence. "That the defendant may move for a new trial on the ground of the preponderance of the evidence in his favor upon some issue which is material for the prosecution to establish, and that the court below, if of the opinion that there is such preponderance, should set aside the verdict, is a well-established and recognized rule. It is also settled that this court will not deal with the question

of the preponderance of evidence." (*People v. Ashnauer*, 47 Cal. 98.)

We are not unmindful that a ruling of a trial court cannot be set aside here merely because a wrong reason was given for it. We are aware, also, that, ordinarily, an opinion of a lower court is not the subject of review here, and is not a legitimate part of the record. Therefore, in determining the question whether the trial court should have granted a new trial on the ground of the insufficiency of the evidence, we must disregard the opinion above noted; and, thus looking at the case, we are not prepared to say that, as a matter of law, there was no evidence to support the verdict. But with the opinion before us we cannot avoid a somewhat strong impression that the defendant has been wrongfully convicted of the high crime of murder in the first degree; and, as in such a case a very slight error of law committed during the trial might have improperly influenced the jury, it is our duty to look with very close scrutiny into the assignments of error. Of course, a judgment will not be reversed for an erroneous ruling, where it appears that it could not have been prejudicial to the party who complains of it; but considering the peculiar character of the evidence in the case at bar, it cannot be said that certain errors which we shall notice were not prejudicial.

As before stated, the main evidence against the appellant was his alleged confession to the witness Francisco. Of course, it is well settled law that the *corpus delicti* must be established independently of evidence which merely tends to connect the defendant with the crime charged; and independently of any asserted extrajudicial admissions or confessions of the party charged, and that such admissions or confessions cannot be considered as evidence of the *corpus delicti*. In *People v. Simon-sen*, 107 Cal. 345, this court declared the rule as follows: "The term '*corpus delicti*' involves the elements of crime," and that "defendant's admissions cannot be used to establish any necessary element in the commission of the crime." (See, also, *People v. Thrall*, 50 Cal. 415.) In *Gray v. Commonwealth*, 101 Pa. St. 380, [1] the court says: "The true rule in such cases is believed to be this: when the commonwealth has given suffi-

[1] 47 Am. Rep. 733.

cient evidence of the *corpus delicti* to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime. Under such circumstances the jury should first pass upon the sufficiency of the evidence of the *corpus delicti.* If it satisfies them beyond a reasonable doubt that the crime has been committed, then they are at liberty to give the confession such weight as it is entitled to." In the case at bar if it be considered that there was some evidence of the *corpus delicti,* without the confession, which entitles the case to go to the jury, still that evidence was exceedingly slight, and it is highly probable that the jury considered the confession in determining that the *corpus delicti* had been sufficiently proved. In *Territory v. Farrell,* 6 Mont. 12, the lower court had instructed the jury, substantially, that they might find defendant guilty upon his admissions alone; and the appellate court reversed the judgment on account of such instruction, and said: "There was other evidence from which the jury might have found the *corpus delicti,* yet we cannot say but the jury might have found the conviction of the defendant upon his confessions alone, under this instruction for their guide." In the present case the court refused to give certain instructions on this subject, asked by appellant, and numbered IV and VI. The clear purpose of these instructions was to inform the jury that in determining whether the crime charged had been committed, they could not consider the confession, or any evidence which tended solely to connect the appellant with the supposed crime. Perhaps neither of these instructions when closely examined will be found to be absolutely perfect; but we think that either of them might have been given without any prejudice to the prosecution. By instruction IV the court was asked to instruct the jury that, "if . . . . you are not satisfied beyond a reasonable doubt whether Jacob J. Veitinger met his death from natural or accidental causes, or from the act of some person, you cannot consider any evidence introduced herein for the purpose of or tending to connect the defendant with the crime upon which he is now being tried." The evident purpose of this instruction was to tell the jury that in determining whether the *corpus delicti* had been sufficiently proven, they should not consider evidence

which tended solely to connect defendant with the crime, and
if so understood it would have been correct; but as there might
be evidence which tended to prove the *corpus delicti*, and also
to connect the defendant with the crime, the instruction is,
perhaps, subject to the criticism that it does not distinguish
evidence having that double character.   The instruction num-
bered VI contains a correct statement of the meaning of *corpus
delicti* and the kind of evidence necessary to establish it.   The
last paragraph of the instruction is as follows: "Alleged con-
fessions and any other evidence the purpose of which is to
connect, or attempt to connect, the accused with the offense
charged cannot be considered by you until the *corpus delicti*
has been proved to your satisfaction to a moral certainty and
beyond a reasonable doubt."   This is subject also to the same
criticism as that above noticed as applicable to instruction IV.
But we think that if in the opinion of the court these instruc-
tions, as offered by appellant's counsel, did not aptly or with
perfect correctness, state the principle of law that was evidently
intended, it should, under the peculiar circumstances of this
case, either have modified them so as to comply with its views
and given them as modified, or should have given an instruc-
tion upon the subject in its own language.   A court is not
always called upon to instruct on a point when not asked to do
so, and, ordinarily, counsel cannot complain of the refusal of
an instruction which is not perfectly correct; but on a trial for
murder where a man's life, or liberty, is at stake, and with such
a condition of evidence as is here exhibited, a court is not
justified in refusing to instruct at all upon the paramount and
vital questions in the case, simply because a particular form of
instruction asked by counsel may be safely refused.   Sections
1093 and 1127 of the Penal Code provide that the court in
charging a jury must state to them, "all matters of law neces-
sary for their information," and must charge "on any points
pertinent to the issue, if requested by either party."   In the
case at bar, the defendant certainly requested instructions on
a point clearly and paramountly "pertinent to the issue"; and,
considering the peculiar circumstances of this case, we do not
think that the court was justified in ignoring the point en-
tirely on account of the form in which the request was made.

We do not want to be understood as saying that, as a general rule, a judgment will be reversed for want of full instructions; but in this particular case we do not see how the jury could have properly come to a conclusion without an instruction that, in determining whether there was sufficient evidence of the *corpus delicti* they could not consider the asserted confession, or other evidence which did not tend to prove the *corpus delicti*, but merely tended to connect the appellant with the crime charged; and yet such instruction was not given in any part of the charge, although an instruction on that point was of the highest importance to a proper consideration of the evidence by the jury. The only instruction given which at all approached the point was appellant's instruction No. II, which was merely to the effect that, in determining whether the remains found in the ruins "were the remains of the body of Jacob J. Veitinger," they could not consider evidence tending to connect the appellant with the crime charged.

Under the instructions given, the jury were at liberty to consider the confession as evidence of any fact necessary to be proven, and it is impossible to say that they did not so consider it; indeed, in view of the character of the other evidence, it is highly probable that the confession was the main evidence upon which they found that a crime had been committed. An instruction on this subject was clearly essential to a proper consideration of the evidence by the jury; and we think that, in this case, it was prejudicial error for the court not to give such instruction, after its attention was directly called to the point; and that, without such instruction, the appellant did not have a fair trial.

We think that it was also prejudicial error, considering the nature of the issues, to give the following instructions: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justified or excusable. But you will observe in this connection that the burden of proof thus cast upon the defendant is not used in any literal sense; it is not neces-

sary that the defendant shall in this matter, more than in any other, prove affirmatively that he did not intend such consequences. It is sufficient that it appears to your understanding by testimony given, by inferences correctly and properly drawn from the whole of the testimony in the case, that, notwithstanding the burden was cast upon him, there still exists in your minds a reasonable doubt of his guilt." Of course, this instruction should not have been given, for it was entirely inapplicable to the case. The appellant did not set up any defense by way of excuse for, or justification of, an alleged act; he denied that he committed the act, and that was his sole defense. The first part of the instruction is taken from section 1105 of the Penal Code, and is applicable only when a defendant sets up circumstances of mitigation, excuse, or justification of an admitted or proved homicide. But the instruction goes beyond the statute, and states further principles not applicable to the case. Of course, a judgment will not be reversed for an instruction containing a mere abstract principle because it is not applicable to the case, where it appears that no injury was done; but can that be said in the case at bar? The instruction assumed, repeatedly, the fact of the "commission of the homicide by the defendant being proved"; and while the judge may not have intended to intimate that there was proof of such fact, yet the jury may readily have understood the language used to have that meaning. It is difficult to imagine why the instruction was given at all; and it cannot be said that it might not have influenced the jury, and thus prejudiced the appellant.

For the foregoing reasons the judgment must be reversed; and, therefore, it is not necessary to consider the exceptions to the very voluminous charges on the subjects of reasonable doubt and circumstantial evidence—some parts of which are, at least, doubtful. It will be assumed that if there shall be another trial the instructions on those points will be confined to a few simple propositions.

In conclusion, we desire to say that this decision is based upon the very peculiar features of this case as above shown; and that in many cases the errors above noticed would not call for a reversal.

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Garoutte, J., Van Dyke, J., Harrison, J., Henshaw, J., and Beatty, C. J., concurred.