[Crim. No. 2100. In Bank.—February 1, 1918.]

THE PEOPLE, Respondent, v. FRED MILLER, Appellant.

CRIMINAL LAW—MURDER—PRELIMINARY EXAMINATION—READING COMPLAINT TO DEFENDANT.—The reading by the magistrate to the defendant of the charging part of the complaint sufficiently informs him of the charge against him, and no substantial right of the defendant, under section 864 of the Penal Code, is violated by the omission to read the formal parts of the complaint.

ID.—DISQUALIFICATION OF JUROR—SCRUPLES AGAINST DEATH PENALTY.—One whose scruples against the death penalty are such that, on the trial of an indictment for murder, he would not vote to convict, even though convinced that the defendant was guilty as charged, if the conviction was to be followed by judgment of death, is clearly disqualified to act as a juror, and a challenge by the prosecution was properly allowed.

ID.—EXAMINATION OF JURORS — REMARKS OF COURT — FAILURE TO OBJECT.—Where, on a trial for murder, a proposed juror being asked, on his examination on the *voir dire,* whether the fact that the defendant was of the colored race would affect his judgment in passing on the question of guilt or innocence, the trial judge, after expressing doubt as to the propriety of the question remarked that he was not altogether clear that, other things being equal, the shadow of color should not be permitted to weigh, but no objection was made, and the court was not asked to admonish the veniremen present to disregard the remark, it will not be considered on appeal.

ID.—PREJUDICIAL REMARKS OF COURT—ERROR CURED BY SUBSEQUENT INSTRUCTION.—The prejudicial effect, if any, of such a remark was cured by a subsequent instruction that: "The law knows no creed or condition, no color, no nationality; every defendant, whatever his race, color, or condition, whether he be rich or poor, high or low,

stands equal before the law, and should be tried with perfect impartiality."

ID.—INSTRUCTIONS—REASONABLE DOUBT.—Where the court instructed the jury that they must be satisfied beyond a "reasonable doubt" of defendant's guilt, and fully explained the meaning of the term "reasonable doubt," no prejudice could result to the defendant from an instruction that guilt might be established by proof of facts and circumstances from which it might be reasonably and satisfactorily inferred.

ID.—INSTRUCTION INAPPLICABLE — MITIGATING CIRCUMSTANCES—DEFENDANT NOT PREJUDICED.—No possible injury or prejudice could result to the defendant on trial for murder, from an instruction in conformity with section 1105 of the Penal Code that "when the killing is proved, it devolves upon the defendant to show any circumstances in mitigation to excuse or justify the homicide by evidence on his part," although the instruction was inapplicable, because the killing was denied, and no mitigating circumstances were shown or suggested.

ID.—INSANITY — DOUBT IN MIND OF COURT — SUBMITTING QUESTION TO SPECIAL JURY.—Where there was nothing in the record suggesting any doubt in the mind of the court as to the defendant's insanity, the court did not err in denying a motion made after trial for an order inquiring into his sanity under section 1368 of the Penal Code.

ID.—VOLUNTARY ADMISSION FOLLOWING AN INVOLUNTARY CONFESSION—ABSENCE OF CAUSAL CONNECTION.—Although a confession purporting to have been made by the defendant on March 12th was excluded, on the ground that it was not voluntarily made, no error was committed by admitting evidence that on March 13th the defendant, in answer to a question by the undersheriff, had voluntarily described the place where he had put the gun with which the crime was committed, and that a gun was found at or near the place described, where there was nothing in the record to show any causal connection between the voluntary statement of March 13th, and the means used to obtain the purported confession of the preceding day.

APPEAL from a judgment of the Superior Court of Ventura County, and from an order denying a new trial. Merle J. Rogers, Judge.

The facts are stated in the opinion of the court.

Orr & Gardner, for Appellant.

Don G. Bowker, District Attorney, U. S. Webb, Attorney-General, Robert M. Clarke, Assistant Attorney-General, and Robert B. Camarillo, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Following defendant's conviction upon an information charging him with the crime of murder in the first degree he was sentenced to execution as provided by law.. From the judgment so pronounced and an order denying his motion for a new trial he appeals.

In the summer of 1915 defendant, who is a colored man, went to the village of Simi in Ventura County, where he was employed as a laborer, and for sometime lived in a tent adjoining the home of a young girl named Josephine Rodrigues who lived with her grandmother, Adela Rodrigues, and a younger sister. In February, 1917, he was employed upon highway work, during which time he lived alone in a tent located some eight miles distant from Simi at a place called Hassan. On March 10th, while living at Hassan, he wrote a letter to Josephine Rodrigues, then sixteen years of age, and gave it to a boy, instructing him to deliver it to her. In this letter, which, however, never reached Josephine, he expressed a strong affection for her, and stated that he had heard she was going to marry another person, and therein made veiled threats of bodily injury to her if she married any one other than himself. On the night of March 10th Josephine, her sister, and her grandmother, Adela Rodrigues, all of whom occupied one bedroom in their home, retired, leaving, as was their custom, a lighted lamp turned low. Soon after 12 o'clock that night Adela was awakened by a noise in the room, and discovered a man with a cloth mask over his face standing near her bed. Receiving no reply to her call "Who are you?" she grasped the mask, pulled it down from his face to a point, as she states, below his nose, at which time the wearer thereof, using a razor, cut her hand and also her face, and then turning from her to the bed occupied by Josephine, he fired three shots from a pistol, two of which entered her head, causing her death, and then left the house. The cries of the grandmother aroused the neighbors, who, upon information given by her as to the identity of the perpetrator of the crime, proceeded in an auto to defendant's camp at Hassan, eight miles distant, arriving there approximately at 2:30 A. M. They found no one at the tent occupied by defendant, and received no response to the calls made for him in the vicinity. A short time thereafter another party seeking his apprehension arrived and found defendant in the tent. His shoes and clothes were

damp and covered with mud, indicating that he had recently been walking in the wet grass and weeds. During the time that defendant lived in the tent adjoining the home of Adela Rodrigues she had often seen him pass the house, and in positive and unequivocal terms she identified him as the man who entered her room, assaulted her with the razor, and fired the shots which killed Josephine.

No evidence whatsoever was offered by defendant in response to that adduced by the prosecution, thus unerringly pointing to him as the perpetrator of the atrocious deed. Nevertheless, we are asked to reverse the judgment upon the ground of alleged errors whereby it is claimed the accused was prejudiced in his substantial rights.

1. At the preliminary examination the magistrate in reading the complaint upon which the warrant of arrest was made as required by section 864 of the Penal Code omitted the formal parts thereof as well as the name of the complainant. Supported by such fact, defendant moved the court to set aside the information upon the ground that he had not been legally committed. The denial of the motion is assigned as error. It appears that enough of the complaint was read to fully inform defendant of the charge against him, all the details thereof as stated in the complaint—the whole charging part of the complaint being read.

Clearly, it cannot be held under these circumstances that the omission to more precisely comply with the requirements of the section in any way prejudiced any substantial right of the defendant.

2. It appeared from the testimony of F. W. Burnell, called for examination as a juror, that he had conscientious scruples against inflicting the death penalty because in his opinion no sane man would take the life of a fellow-being, and even though as a juror convinced that defendant committed the murder as charged, he would not vote to convict if his conviction was to be followed by judgment of death. The showing made on his *voir dire* disclosed that Burnell was clearly disqualified to act as a juror, since he had conscientious scruples against following the plain mandate of the law. The challenge interposed by the prosecution was properly granted.

3. While questioning a proposed juror on his *voir dire,* counsel for defendant inquired of him whether the fact that

defendant was of the colored race would in any way affect his judgment in passing upon his guilt or innocence. Thereupon the court expressed doubt as to the propriety of the question, and as to the weight to be accorded conflicting evidence between a white and a colored witness, and said: "Where all other things are equal the jury has to decide one way or the other on the question of credibility. If every other thing is absolutely equal he has to decide one way or the other and I am not altogether clear that in such a case the shadow of color should not be permitted to weigh." Defendant claims that this remark was prejudicial because made in the presence of other veniremen. Such fact, however, is not disclosed. Conceding the impropriety of the statement and that it was made, as claimed by defendant, in the presence of those thereafter called as jurors, no objection was made thereto, and no request made by appellant to admonish the veniremen present to disregard the remark. As stated in *People* v. *Kramer*, 117 Cal. 651, [49 Pac. 842]: "A defendant cannot remain silent and take the chance of a favorable issue and losing urge for reversal an error which but for his silence might never have found its way into the case." Moreover, the alleged error and the prejudicial effect thereof, if any existed, was cured by an instruction to the jury as follows: "You are further instructed, gentlemen, that the law knows no creed or condition, no color, no nationality; every defendant, whatever his race, color or condition, whether he be rich or poor, high or low, stands equal before the law and should be tried with perfect impartiality."

4. The court instructed the jury to the effect that they must be satisfied beyond a reasonable doubt of defendant's guilt, and thoroughly and fully explained to the jury the meaning of the term "reasonable doubt," and, hence, no prejudice could have resulted from an instruction to the effect that defendant's guilt might be established by proof of facts and circumstances from which it may be reasonably and satisfactorily inferred.

5. Complaint is made that the court erred in instructing the jury with reference to evidence of circumstances in mitigation of the offense, and particularly in stating to the jury that "when the killing is proved it devolves upon the defendant to show any circumstances in mitigation to excuse or justify the homicide *by evidence on his part.*" The instruc-

tion clearly conforms to the provision contained in section 1105 of the Penal Code. (*People* v. *Wilt,* 173 Cal. 483, [160 Pac. 561].) While inapplicable to the case for the reason that no circumstances of mitigation or . excuse are shown or even suggested, the defense being a denial of the killing by the accused, no possible injury therefrom could result to defendant. (*People* v. *Tapia,* 131 Cal. 647, [63 Pac. 1001].)

6. The giving of two instructions complained of, one of which is identical with that given in *People* v. *Rogers,* 163 Cal. 476, and set forth on page 483 of said volume, [126 Pac. 143], and the other a copy of an instruction given in *People* v. *Valencia,* 32 Cal. App. 631, and found on page 633 of said volume, [103 Pac. 865], were therein fully considered and approved. No purpose can be served by reiterating what is said upon the subject in the opinions referred to. Suffice it to say the court did not err in so instructing the jury.

7. And, likewise, what is said by this court in *People* v. *Worden,* 113 Cal. 574, [45 Pac. 844], is a complete answer to appellant's contention that the failure of the court to give to the jury a form of verdict finding the defendant guilty of murder in the second degree was prejudicial error. Here, as there, the case was tried upon the theory that the defendant did not commit the acts with which he was charged. Here, as there, the court properly instructed the jury as to what constituted murder in the second degree. Here, as there, the court failed to give the jury such form of verdict, and in neither case was any request made therefor by the defendant.

8. In the light of the entire evidence we have carefully examined lengthy instructions requested by defendant, and in so far as they embodied proper questions for the consideration of the jury the subjects thereof are fully covered by instructions elsewhere given.

9. It is next claimed that the court should have granted defendant's motion made after trial for an order inquiring into the sanity of the defendant. No affidavits were offered in support of the motion, and no evidence was introduced on the trial in support of a defense based upon the insanity of defendant. Section 1368 of the Penal Code provides that if a doubt arises as to the sanity of the defendant the court must order the question submitted to a jury and suspend the pronouncing of judgment until the question is determined.

There is nothing disclosed by the record showing any doubt in the mind of the court, nor indeed is there anything which could be deemed calculated to raise such doubt as to defendant's sanity, in the absence of which no reason existed requiring the court to submit the question to a jury. (*People* v. *Hettick,* 126 Cal. 425, [58 Pac. 918]; *People* v. *Pico,* 62 Cal. 60; *People* v. *Kirby,* 15 Cal. App. 269, [114 Pac. 794].)

10. Upon the ground that it was involuntarily made, the court excluded from evidence a purported confession of the defendant made on March 12th. Over defendant's objection upon the ground that it was sought thereby to elicit evidence of an admission not voluntarily made, but obtained as the result of persistent questioning of the defendant on the preceding day when the confession so excluded was made, the undersheriff was permitted to testify that on the morning of March 13th he met the defendant and asked him what he did with the gun after the shooting, to which defendant replied that he "put the gun on the other side of the bridge at Simi about half way between the bridge and the culvert down on the right-hand side on a sloping bank in some weeds." It further appeared that a gun was found at or near the place described by the defendant, which, over defendant's objection that it was not shown to have any connection with the crime, was received in evidence. The two rulings are assigned as error. The action of the court in permitting the answer of defendant was based upon the fact that the persistent interrogating of defendant the preceding day, the purpose of which, as shown by the record, was to ascertain *why* he committed the crime, did not then operate upon his mind or influence him in telling where he placed the gun after the shooting. In other words, there was no causal connection between the answer given to the undersheriff and the means which on the preceding day induced the making of the confession, the nature of which is not shown. If defendant on March 13th in making the answer to the undersheriff was free from any influence due to the persistent interrogation on the preceding day, the statement was voluntary. The trial court so determined, and there is nothing in the record upon which we can say it erred in so doing.

As to whether the revolver received in evidence was the one with which the killing was done admits of doubt, but the objection to its reception in evidence goes to the weight of

such evidence rather than to its admissibility. Conceding that if such was the fact and the proof at hand it should have been shown that the bullets causing decedent's death corresponded to the caliber of the gun, nevertheless, the admissibility thereof in evidence is unaffected by the failure to establish such fact.

The record discloses no prejudicial misconduct on the part of the district attorney. The rulings of the court were eminently fair and the uncontradicted evidence, both direct and circumstantial, was such that it is impossible to conceive of a verdict other than that rendered by the jury.

The judgment and order are affirmed.

Richards, J., *pro tem.*, Shaw, J., Melvin, J., Sloss, J., and Angellotti, C. J., concurred.

Rehearing denied.