[Crim. No. 647.   Second Appellate District, Division One.—May 12, 1919.]

THE PEOPLE, Respondent, v. VICTORIO CABALLERO, Appellant.

[1] CRIMINAL LAW—MURDER—EVIDENCE—PROOF OF CORPUS DELICTI.—In this prosecution for murder there was sufficient proof that the person alleged to have been murdered was actually dead, that he was killed by a pistol shot, and that the shot was fired from a pistol in the hands of the defendant or of one of his two confederates at the time and place in question.

---

1. Character and sufficiency of proof of corpus delicti in prosecution for homicide, notes, 68 L. R. A. 57, 73, 75-78; 7 L. R. A. (N. S.) 181.

[2] ID.—RIGHT OF DEFENDANT TO COUNSEL—REASONABLE POSTPONE-MENT—DISCRETION OF MAGISTRATE.—When the charge against a defendant is called for preliminary examination before the committing magistrate, and the defendant, upon being advised with reference to his right to counsel, replies that his cousin will come to his aid and secure an attorney for him, and thereupon the hearing is postponed thirteen days, at which time the defendant appears in court without counsel, it cannot be said that the committing magistrate abuses the discretion vested in him when half an hour after the time set for hearing on the latter date he determines that he has waited a reasonable time for the appearance of counsel for the defendant at that hearing.

[3] ID.—TESTIMONY OF WITNESS AT PRELIMINARY HEARING—ABSENCE FROM STATE—SUFFICIENCY OF FOUNDATION.—In a prosecution for the crime of murder, sufficient foundation for the introduction in evidence of the testimony of a witness taken at the preliminary hearing is established when it is shown that the witness is stationed at a specified army cantonment which is located in another state.

[4] ID.—PROOF OF HOMICIDE—QUESTION FOR JURY—INSTRUCTIONS.—An instruction "that upon a trial for murder, *the commission of the homicide by the defendant being proved,* the burden of proving circumstances of mitigation or that justify or that excuse it devolves upon him," is not erroneous, and does not charge the jury with respect to matters of fact.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial. T. L. Lewis, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. F. Du Fresne for Appellant.

U. S. Webb, Attorney-General, and Joseph L. Lewinsohn, Deputy Attorney-General, for Respondent.

CONREY, P. J.—The defendant was convicted of the crime of murder and sentenced to imprisonment for life. He appeals from the judgment and from an order denying his motion for a new trial.

The court received in evidence the testimony of one W. A. Wiedenbeck, taken at the preliminary examination

---

2. Right of accused person to benefit of counsel before pleading, note, **Ann. Cas.** 1918D, 100.

before the magistrate, it appearing that at the time of the trial· in the superior court Wiedenbeck was absent from the state of California, being at that time at Camp Lewis, Washington, in the service of the government of the United States. It was shown by this testimony that on the fourteenth day of March, 1914, Frank Volney Johnston, the man alleged to have been killed at that time, was the manager of a store at Tecate, in San Diego County. The witness was assistant postmaster, and clerk in the store. A postoffice was located in the store. Between 8 o'clock and half-past 8 o'clock on the evening of that day, while Johnston was sitting in the postoffice and the witness was in the store, three men came to the door and one of them fired a shot at the witness. Two of these men threw down the witness and tied his arms behind him, while another ran over to the postoffice and "covered" Johnston. When the two men had tied the witness they ran out, and as they ran out there was one more shot fired. Then they came back and took the witness to the postoffice, where the safe was, and demanded that he open the safe, which, however, he did not do. During these proceedings the witness recognized the defendant by his eyes and by his voice. The men were masked with bandanna handkerchiefs.

There was another witness who approached the store after the shots were fired and saw a man robbing the till in the store, whom he recognized as the defendant. A few minutes later the store was found to be on fire and it was destroyed by the fire. In the debris of the store after the fire there were found the remains of a human body. The head and limbs were burned off so that the body could not be recognized as that of any known person. Through the heart there was a hole which the evidence tends to show was produced by a bullet. Wiedenbeck testified that he never saw Johnston again after the fire; nor is there any witness who claims to have seen him alive after that time.

[1] Appellant claims that the verdict is contrary to law in that there was not sufficient proof of the *corpus delicti*. He claims that there is no proof that Johnston, the person alleged to have been murdered, was actually dead. In our opinion, there is no merit in this contention. The surrounding circumstances shown by the evidence, together with the direct testimony of Wiedenbeck to which we have

referred, strongly tend to prove that the dead body found
after the fire was the body of Johnston; that he was killed
by a pistol-shot, and that the shot was fired from a pistol
in the hands of the defendant or of one of his two con-
federates at the time and place in question.

Appellant contends that the court erred in overruling his
objection to the introduction in evidence of the deposition
of the witness Wiedenbeck. It is provided by the Penal
Code, section 686, subdivision 3, that "where the charge
has been preliminarily examined before a committing magis-
trate and the testimony taken down by question and answer
in the presence of the defendant, who has, either in person
or by counsel, cross-examined or had an opportunity to
cross-examine the witness; . . . the deposition of such wit-
ness may be read, upon its being satisfactorily shown to the
court that he is dead or insane, or cannot with due diligence
be found within the state."

When the district attorney offered in evidence the testi-
mony of Wiedenbeck taken at the preliminary examination,
counsel for defendant made his objection as follows: "I
wish to enter my objection to the introduction of that testi-
mony on the ground that it is incompetent, and in violation
of the constitutional rights of this defendant. The defend-
ant was brought before the justice of the peace, and the de-
fendant demanded the services of counsel, and the court
denied defendant the services of counsel and went ahead
with the preliminary examination." [2] The proceedings
before the justice of the peace were shown to be as follows:
On July 2, 1918, the charge against the defendant being
called for preliminary examination before the justice of
the peace, a shorthand reporter and an interpreter in the
Spanish language were duly appointed and qualified. The
complaint was read and was translated to the defendant in
Spanish by the interpreter. The court asked defendant if
he had an attorney, and defendant replied, "My cousin will
come to my aid and secure an attorney for me." The
court informed the defendant that if defendant had an at-
torney he was entitled to have him attend at all stages of
the proceedings and that defendant was entitled to have a
peace officer deliver a message to any attorney he might
designate, free of charge. Thereupon the hearing was con-
tinued until the fifteenth day of July, 1918. At that time

the defendant appeared unaccompanied by counsel, and informed the court that he was waiting for Attorney Valenzuela, who had told defendant that he "had to be here." The court replied that Valenzuela knew that the case was set, as he had examined the record, and knew that the case was set for 2 o'clock, whereas it was now half-past 2. The court thereupon directed that the hearing proceed. It was under these circumstances and at that hearing that the testimony of Wiedenbeck was taken. The defendant being asked if he wanted to ask the witness any questions, replied that he had to have Valenzuela so that he could ask the questions. The result was that no cross-examination was had. In addition to the foregoing facts shown by the record of testimony and proceedings before the committing magistrate, the district attorney testified that at said time of the preliminary examination the defendant claimed that Mr. Valenzuela was his attorney. "We got Mr. Valenzuela; it was some time after half-past 2, about the time of the taking up of the preliminary examination. Mr. Valenzuela came down and said he was not going to represent him, and would not represent him; he wanted him to, but he was not willing to do it"; that the defendant did not ask to have any other counsel sent for on that occasion.

The magistrate allowed the defendant a reasonable time to send for counsel and postponed the examination for that purpose, in full compliance with the requirements of section 859 of the Penal Code. Section 860 of that code says: "If the defendant requires the aid of counsel, the magistrate must, immediately after the appearance of counsel, or if, after waiting a reasonable time therefor, none appears, proceed to examine the case." We are unable to say that the committing magistrate abused the discretion vested in him when he determined that he had waited a reasonable time for the appearance of counsel for the defendant at that hearing.

The case is in very definite contrast with that of *People v. Napthaly,* 105 Cal. 641, [39 Pac. 29], where it was held that the court erred in refusing to set aside an information upon the ground that the defendant had not been legally committed by any magistrate before the filing of the information; it having been made to appear that at the preliminary examination before the magistrate the defend-

ant was not represented by any counsel and that the magistrate refused to continue the examination for the purpose of enabling him to employ counsel, and entirely failed to inform the defendant of his rights as required by the provisions of the Penal Code. **[3]** Counsel for appellant claims that due diligence was not exercised to produce the witness Wiedenbeck at the trial of this case. The obvious reply is that when it was shown that Wiedenbeck was without the state of California, by showing he was at that time at Camp Lewis in the state of Washington, the district attorney was discharged from further obligation to produce the witness at the trial, since there was no legal process by which he could have compelled such attendance. We hold, therefore, that sufficient foundation was established for the introduction in evidence of Wiedenbeck's testimony at the preliminary examination, and that the court did not err in overruling defendant's objection thereto.

**[4]** An instruction, which we will call the eighteenth instruction, to the jury was as follows: "You are further instructed that upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation or that justify or that excuse it devolves upon him unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter or that the defendant was justifiable or excusable." Appellant points out that this instruction was wholly inapplicable and was not based on any fact or issue in the case. This criticism is justified by the fact that unquestionably under the evidence either the defendant was guilty of murder in the first degree or he was not guilty at all, and his sole contention was that he had not committed the crime and was not present when the acts were perpetrated. Evidently recognizing this as the true state of the case, the court at a time when the jury had been recalled at its request for another purpose withdrew that instruction and directed that the jury "treat that instruction as if it had never been given; give it no consideration whatever in seeking to reach a verdict."

Appellant further criticises the instruction as being an indirect comment on the facts, in violation of section 19 of article VI of the state constitution, which provides: "Judges shall not charge juries with respect to matters of fact, but

may state the testimony and declare the law." The in-
struction given is in the language ,of section 1105 of the
Penal Code. In *People* v. *Grill,* 151 Cal. 592, [91 Pac.
515], where the same instruction was given, it was claimed
by appellant that the phrase, "the commission of the homi-
cide by the defendant being proved," constituted an intima-
tion or statement by the court that the fact that the de-
fendant intentionally fired the shot had been proven. But
the court said that the signification of the clause was the
same as if the sentence began thus: "When upon a trial for
murder the commission of the homicide ˙by the defendant
has been proved," etc. It was held that thus understood
the clause did not constitute a statement of fact by the
court. The case was there distinguished from *People* v.
*Tapia,* 131 Cal. 647, [63 Pac. 1001], which is relied upon
by appellant here. In *People* v. *Grill, supra,* the supreme
court further noted that in other instructions the jury had
been told that they were the exclusive judges of the facts,
and that the prosecution must show defendant's guilt and
every fact essential to a conviction beyond a reasonable
doubt, together with other proper instructions given.
Whereupon the supreme court said: "In view of these
instructions it would be impossible for any jury of ordi-
nary intelligence to have supposed that the instruction com-
plained of was intended to state to them that the fact that
the defendant had committed the homicide had been
proven." So in the case at bar the court clearly instructed
the jury that it was their exclusive province to determine
the facts from the evidence; that with questions of fact,
the weight of evidence and the credit to be given to wit-
nesses, the court had nothing to do; and that the burden
was upon the prosecution to establish defendant's guilt be-
yond a reasonable doubt. We are of the opinion that even
if the court could not cure a supposed erroneous instruc-
tion by withdrawing the same when the jury was recalled
(as appellant here contends, but which we do not concede),
the instruction itself, when reasonably understood and in-
terpreted in connection with the other instructions given,
was not erroneous and the giving thereof would not consti-
tute ground for reversal of the judgment. In *People* v.
*Wilt,* 173 Cal. 477, [160 Pac. 561], referring to an instruc-
tion like that in question here and containing the phrase

"the commission of the homicide by the defendant being proved," the supreme court said: "Ordinarily this language could not fairly be held to have any such signification" as that the court was intimating an opinion or belief that the homicide had been proved.

The judgment and order are affirmed.

Shaw, J., and James, J., concurred.