PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. MIGUEL TRUYOL, JR., Defendant and Appellant.

No. 3077. Argued February 3, 1927.—Decided March 9, 1927.

C. Dominguez Rubio for the appellant. José E. Figueras for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Section 2 of an Act to regulate the operation of motor vehicles in Porto Rico and for other purposes (Laws of

1916, p. 140) provides, among other things, that: "It shall be unlawful for any motor vehicle to be operated on a public highway in Porto Rico without a license therefor issued by the Commissioner of the Interior." Section 1 of the same law expressly provides that the words "public highway" shall mean any road, insular or municipal, or any street or alley of any municipality.

The contention of appellant that an information charging the operation of an automobile without a license upon a city street does not state an offense, manifestly overlooks the statutory definition of the term "public highway."

A somewhat more plausible proposition is that—

"The court erred in admitting, over the objection of the defendant, secondary evidence to show that the automobile which he was driving was not registered in the Department of the Interior of Porto Rico, allowing the witness to testify as to statements of the defendant, instead of requiring the best evidence in connection with this testimony, and also in admitting admissions and confessions of the defendant before the *corpus delicti* had been established independently of defendant's confession."

In support of the last mentioned and more serious aspect of this ground of appeal, appellant refers to three California cases and to the doctrine announced therein as follows:

"Where proof of the *corpus delicti* has been had only through the confession of the defendant, a conviction is error. People v. Long, 1 Cal. Unrep. 710."

"It is not essential, in establishing the *corpus delicti*, that there must be direct proof of the elements constituting the same; but it is sufficient that all of the elements constituting the crime were brought home to the knowledge of the defendant by circumstantial proof, justifying the jury in returning a verdict of guilty, irrespective of the admissions and confessions of the defendant. People v. Rowland, 12 Cal. App. 6, 106 Pac. 428."

"The *corpus delicti*, involving all the elements of the crime, must be established independently of evidence which merely tends to connect the defendant with the crime charged; and the admissions or confessions of the defendant can not be considered as evidence of

the *corpus delicti*, nor used to establish any necessary element·in the commission of the crime. People v. Tapia, 131 Cal. 647.''

"The term 'corpus delicti' involves elements of crime; and, in order to prove it, all of the elements of crime must be made to appear before defendant's confessions are admissible for any purpose, and they can not be used to establish any necessary element of the commission of a crime. People v. Simonsen, 107 Cal. 345, 40 Pac. 440.''

The *fiscal* practically ignores this salient feature of the instant case and we have little time for independent investigation even in cases of larger importance than the one now under consideration.

At the trial a policeman testified that he had filed a complaint against the defendant for driving an unlicensed automobile.

Defendant moved to strike the statement upon the ground that a negative certificate from the Department of the Interior would be better evidence of the fact that the car in question was unlicensed.

The court conceded that counsel was correct in the absence of further showing, but indicated a disposition to investigate the grounds upon which the statement as made by the witness was based.

The witness then stated that the car carried no number plates; that witness stopped defendant and asked him why he was driving a car without number plates and defendant answered:

"* * * that he was driving the car because he had sent a man to San Juan with money to get the number plates, but it seemed that the man had gone on a spree and spent the money and had not come back.''

Following this recital of the admission imputed to the accused, the policeman stated that he, therefore, concluded that the car had no license.

Counsel for defendant then insisted upon the ''elimination,'' without any more specific reference to any part of

the testimony, upon the ground that the lack of a license was a conclusion of the witness. The court overruled the motion and defendant took an exception.

Obviously, the question here raised did not go to the admissibility of the evidence as to the total absence of number plates.

The witness above mentioned later repeats the statement that the car on the date specified in the complaint had no number plates, but reappeared upon the streets within a few days thereafter equipped with such plates.

The district chief of police was also an eye witness to the halting of the car, to the absence of number plates and to the subsequent display of such plates.

Section 3 of the Law, as amended in 1921, 1925 and 1926, reads as follows:

"Section 3.—(a) That upon receipt of such application and upon payment of the fees as hereinafter provided, the Commissioner of the Interior shall assign a number to the vehicle and issue a license and number-plates bearing such number and the letters P. R., which plates shall always be displayed on the vehicle when it is being operated. In the case of a motor cycle, but one plate shall be issued, and in other cases, two plates. Such plates shall be at least fifteen inches long and six inches wide, and the figures four inches high with strokes not less than half an inch wide. The figures and the body of the plate shall be of strongly contrasting colors, and the color of the plates for each succeeding fiscal year shall be of a different color from that of the preceding year. The number-plate of a motor cycle need be but eight inches long with figures of proportionate size and shall be affixed at the back of the vehicle in a horizontal position and so as to prevent swinging.

"(b) The number plates of other motor vehicles shall be fastened one in front and one in the rear, in such a way as to be clearly visible at a distance of fifty feet in the direction toward or from which the motor vehicle is traveling, with the figures perpendicular to the axles of the vehicle and in such a way as to prevent swinging.

"(c) During the time motor vehicles are required to carry lights, the rear plate shall be lighted so that the number may be clearly read at a distance of fifty feet in the direction from which the motor

vehicle is traveling, and all number-plates shall be kept clean enough to permit the number to be read easily.

"(d) No other numbered plates except those prescribed by this section, or those allowed by sections 4 and 7 of this Act, shall be displayed on the outside of any motor vehicle.

"(e) The number plates are the property of The People of Porto Rico and shall be returned to the Commissioner of the Interior at the expiration of the fiscal year for which they were issued; *Provided,* That when this is not done, the sum of one (1) dollar shall be deposited for each set of number plates, which sum may be reimbursed to the party concerned if he returns said number plates within the ninety days following the termination of the fiscal year for which they were issued. If not, said deposits shall be forfeited.

"(f) Duplicates of licenses may be issued under such rules as may be established by the Commissioner of the Interior. If practicable, duplicate number-plates may be furnished by the Commissioner of the Interior to replace those lost or rendered unserviceable. Otherwise, a new number and a new set of plates may be issued.

"(g) In case an automobile is rendered unserviceable for the remaining part of any fiscal year and the value of the unexpired license fee is in excess of ten dollars, the Commissioner of the Interior, upon receiving satisfactory evidence of such unserviceability, shall allow the owner of such automobile credit to the amount of such unexpired fee on any new license which may be issued to such owner for a similar vehicle within sixty days from the date on which the previous license became useless.

"(h) The Commissioner of the Interior may suspend or cancel the license, and order confiscation of the number-plates, of any motor vehicle engaged in the public service when such license and number-plates were obtained solely for private service; and he may cancel the license of any motor vehicle engaged in the public service when, in his judgment, the automobile is operating under such conditions as to constitute a menace to the public safety."

A headnote to *Feeley* v. *Melrose,* 27 L.R.A. (N. S.) 1156, reads thus:

"That an automobile was not duly registered at the time of an accident may be found from the facts that at that time it bore a register number of a former owner, which by statute expired at the time of the transfer of the machine."

In the case at bar the offense was committed about the middle of the first month in a new fiscal year at a time when all number plates issued for the preceding fiscal year were required by law, to be returned to the custody of the Commissioner of the Interior in exchange for new plates of a different color indicative of a renewal of the license. The absence of the new plates at such a time was at once more conspicuous and more significant than would have been the failure to display an old plate during the last few weeks of an expiring fiscal year.

Among the definitions contained in section 1 of the law already referred to is the following: " 'Number-plate' shall mean the sign furnished by the Commissioner of the Interior, on which is displayed the license number assigned by him to a motor vehicle." The obvious importance attached by the law to the size, color and visibility of these number plates, and to the manner in which they shall be displayed at all times, as indicated by the painstaking care as to details, so conspicuous in section 3, *supra,* points plainly, we think, to an intention that the plates are to be regarded as *prima facie* evidence of the existence of a license for the fiscal year indicated by the color. By the same token the display of a plate known by its color to be one of those issued for a previous year, or the total absence of any plate, may well be considered to be *prima facie* evidence of the non-existence of a license for the current fiscal year.

The rule requiring the establishment of the *corpus delicti* by evidence other than the extrajudicial admissions of a defendant, as announced and applied by the California cases, is summed up in 8 Cal. Jur., pages 234 and 235, section 303, as follows:

"Logically, the first point to which the evidence of the people should be directed is the *corpus delicti.* This should be established before the introduction of evidence tending to connect the defendant with the offense. The rule, however, does not go so far as to exclude, in showing the *corpus delicti,* proof of the defendant's connection

with the crime, where the circumstances of the case are such that proof of the crime involves proof of defendant's guilt.

"Proof of the *corpus delicti* should be made before the introduction of evidence of extrajudicial statements or admissions, and confessions. But in the absence of any showing of prejudice, irregularity in the order of proof is of no consequence, if the commission of the crime is ultimately established independently of the alleged admissions of the defendant.

"To authorize the reception and consideration by the jury of evidence of an extrajudicial confession or admission of a defendant, the people need not establish the *corpus delicti* by proof of the clear and convincing character required to support a conviction. It is sufficient if there is some proof, or prima facie proof, or even slight proof of the *corpus delicti*."

The judgment appealed from must be affirmed.