[Crim. No. 1543. Third Appellate District.—March 9, 1937.]

THE PEOPLE, Respondent, v. AURELIO PEREZ, Appellant.

Stephen P. Galvin for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was found guilty of murder in the second degree upon an information charging that on or about the 25th day of July, 1936, in the county of Merced, state of California, he did wilfully, unlawfully and feloniously kill one Andreas Calderon, with malice aforethought. From the judgment based upon the verdict and the denial of his motion for new trial, the defendant appeals. In his appeal the appellant assigns the following reasons as grounds for reversal:

1st. That the verdict is contrary to the evidence;

2d. Erroneous instructions;

3d. Erroneous instruction on forms of verdict;

4th. Refusal to give instructions;

5th. Prejudicial misconduct of the district attorney;

6th. Misconduct of the jury.

■ The appellant's brief contains only an abbreviated summary of the testimony. The respondent's brief, however, sets forth the testimony of an eye-witness which, if believed by the jury, we think amply sufficient to sustain the verdict. The testimony is to the effect that the offense was committed on or about the hour of 8:30 on the evening of July 25th. Several witnesses heard the report of the shooting, indicating that four shots were fired, all taking effect in the body of the deceased. The same witnesses saw the flash of the revolver.

The main testimony, and upon which the respondent relies, and which we think amply sufficient to sustain the verdict, was by an eye-witness named Tranquilino Lopez. His testimony is summarized by the respondent, which we have verified by an examination of the record, and therefore set it forth as sufficient to sustain the verdict. We may premise by saying that the shooting occurred at a point near the railroad tracks a short distance from the business section of the city of Merced.

Mr. Lopez testified that he and his wife, on the evening of July 25, 1936, were returning to their home at 1004 Fourteenth Street from the business district of Merced; that at the intersection of O Street with the railroad tracks they met one Roberta Gonzales; that while standing there talking he heard several shots, and looking, observed two persons, and recognized the voice of the decedent, and saw and heard a second person striking him. At that time Lopez and his wife and Gonzales were standing on the south side of the railroad tracks at a signal pole. The deceased and the other man were in a westerly direction from them, standing on a pathway running along the south side of the railroad tracks. The body of the deceased was found to be lying approximately 200 feet from the point where the witness and his wife and Gonzales were standing. Upon hearing the shots Lopez and his wife started for home, proceeding along a diagonal path; thence, along Fifteenth to Q Street, and thence down Q Street to their home at Fourteenth and Q. Lopez, while

walking, continued to watch the two men, and after seeing the deceased fall, saw the other man leave the scene at a rapid rate of speed, and go west along the path along the south side of the railroad tracks to its intersection with Q Street, thence out Q Street to a point near Fourteenth and Q Streets, where he (the defendant) overtook the witness and his wife. Lopez testified that he identified this man as the defendant. The half blocks between Fifteenth Street and the railroad tracks and O and Q Streets are vacant, and it is possible to see across the Southern Pacific reservation all the way down Q Street. The witness Lopez testified that he watched the man leaving the scene of the shooting, kept him in view all the time until they arrived at the meeting place just designated.

At the time of the shooting the witness and the defendant were only about 200 feet distant, and could be readily seen by each other. The testimony shows that it was not yet very dark. (Outside of this testimony it is common knowledge that it is not very dark at 8:30 o'clock of a July evening.)

Having watched the defendant from the time he left the place of the shooting until he encountered him at the intersection of the street named, it certainly shows that the contention of the appellant that there is no testimony to support the verdict is not well taken, and that any other verdict by the jury than guilty, where nothing further appears, would not have been justified.

The testimony further shows that the witness had an unobstructed view of the defendant during the entire distance that was traveled by the respective parties, from the time of the shooting until they met. There is also testimony that there were street lights at the intersection of Fifteenth and O and Fifteenth and P Streets, and at the intersection of the railroad tracks and O Street. It further appears from the testimony that at no time were the witness Lopez and the defendant more than 200 or 300 feet apart.

The credibility of this witness and his testimony as to having watched the movements of the defendant were facts to be determined by the jury, and having determined the same adversely to the contentions of the appellant, this court has no authority to disturb such determination.

■ The appellant makes the point that no revolver was found or produced in evidence. This point is wholly immaterial. The witnesses testified to hearing the shots and seeing the flash of the exploded cartridges. The finding and producing of the gun that was used in the firing of the bullets would only have been corroborative testimony.

■ Appellant also contends that no motive for the killing was proved. The establishment of a motive, outside of the actual killing, is not essential to support a conviction where the crime is otherwise established by sufficient evidence. No witness was sufficiently near to hear all that passed between the defendant and the deceased prior to the shooting. The defendant did not take the stand in his own behalf, and consequently there is no explanation of the occurrences which preceded the killing. The contention of the appellant in the particular just mentioned is fully answered by section 188 of the Penal Code. The verdict in this case is not based upon circumstantial evidence, but upon the direct testimony of an eye-witness who heard the shooting and watched the movements of the defendant until he came in contact with him, as hereinbefore stated.

■ Passing from the contention that the testimony is insufficient to support the verdict, the appellant alleges prejudicial errors in the giving of an instruction on the burden of proof and justification. At the request of the prosecution the court gave as one of its instructions section 1105 of the Penal Code, to wit: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation or that justify or excuse it devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime only amounts to manslaughter or that the defendant was justifiable or excusable."

The objection to this instruction is based upon the grounds that the defendant offered no evidence, and that the instruction was therefore inapplicable. In making this contention the appellant relies principally upon the case of *People* v. *Tapia*, 131 Cal. 647 [63 Pac. 1001], in which the court holds that where there is no plea of self-defense or excuse or justification, such an instruction is erroneous. It appears in that case that the holding was had upon the theory that the jury

would infer from the instruction that the commission of a homicide by the defendant had been proved.

The court also instructed the jury that unless they found the defendant guilty beyond a reasonable doubt, a verdict of acquittal should be returned, and that the burden of proving the defendant guilty beyond a reasonable doubt rested upon the prosecution.

If it be admitted that the instruction was inapplicable, and therefore, erroneous, it does not follow that the judgment should be disturbed. The case of *People* v. *Tapia, supra,* was decided prior to the adoption of section 4½ of article VI of the Constitution. However, under the following authorities it would appear that the instruction was neither erroneous nor prejudicial.

In *People* v. *Madison,* 3 Cal. (2d) 668 [46 Pac. (2d) 159], the following instruction embodying the question of proof and mitigation, etc., was held not to warrant a reversal, on the ground that it constituted prejudicial error. We quote therefrom as follows: ''Pursuant to section 1105 of the Penal Code the court gave the following instruction: 'The court instructs the jury that up to the moment when the killing is proved, the prosecution must make out its case beyond a reasonable doubt. When the killing is proved, it devolves upon the defendant to show any circumstances in mitigation to excuse or justify the homicide by evidence on his part; that is, the killing being proved, the defendant must make out his case in mitigation, or to excuse or justify it by some proof strong enough to create in the minds of the jury a reasonable doubt of his guilt of the offense charged, unless as before stated, the proof on the part of the prosecution tends to show the crime committed only amounts to manslaughter, or that the defendant was justified or excused in doing the act.' ''

The case of *People* v. *Post,* 208 Cal. 433 [281 Pac. 618], cited by the appellant in this case, is distinguished and shown to be erroneous in that it placed upon the defendant in that case the showing of circumstances of mitigation or excuse by a preponderance of the evidence, instead of simply creating a reasonable doubt as to the same.

The case of *People* v. *Rodriquez,* 182 Cal. 197 [187 Pac. 423], is also likewise a complete answer to the appellant's contention.

In *People* v. *Caballero*, 41 Cal. App. 146 [182 Pac. 321], where the contention of the appellant was that he was not present at the time of the killing, the court gave an identical instruction with the one here challenged, and afterwards ordered the return of the jury, and recalled the instruction. The court held that no prejudice could have followed from the giving of the instruction, although the trial court had the right to recall the same.

From these latter cases, it is clear that the case of *People* v. *Tapia, supra,* and the case of *People* v. *Miller,* 177 Cal. 404 [170 Pac. 817], are no longer authority for holding that the giving of the instruction according to section 1105, *supra,* constitutes prejudicial error.

It further appears from the record, when the jury returned for further instructions, the court instructed the jury as follows: ''I want to be certain that you understand what is meant by the instruction that was read to you before, and that is, that not only does the actual killing have to be proven, but the killing has to be proven to have been done by the defendant before the burden shifts upon him.'' There is no showing in the record as to whether this instruction was written or oral, but the record shows that the reporter reduced it to writing, which complies with the holding of the court in the case of *People* v. *Mack,* 115 Cal. App. 588 [2 Pac. (2d) 209].

 The court has a right to correct an instruction if upon reflection the court considers that such correction should be made. (15 C. J., p. 1055.)

 It is further argued that the court committed prejudicial error in submitting forms of verdict to the jury. It appears from the record that the court did not read all of the forms of verdict submitted to the jury, but only read the following: That they might return one of the following verdicts, to wit: Murder in the first degree; murder in the first degree, fixing punishment at imprisonment in the state prison for life; murder in the second degree; and manslaughter; failing to read to the jury in the same instruction that they might return a verdict of not guilty. Immediately preceding this instruction or the submission of the forms of verdict to the jury, the court gave the following instruction: ''Under the indictment in this case the jury may, if the evidence warrants it, find the defendant guilty of murder in the first

degree, or murder in the second degree, or manslaughter, or not guilty. Should the jury entertain a reasonable doubt as to which of the grades of crime named the defendant may be guilty of, if any, they should give the defendant the benefit of such doubt, and acquit him of the higher offense.'' The record shows, however, that the jury had with them in the jury-room a form of verdict to be used in the event the jury found the defendant not guilty. Without copying herein what is said in the case of *People* v. *Onessimo*, 65 Cal. App. 341 [224 Pac. 101], it is sufficient to say that the opinion in that case completely answers and refutes the contention of the appellant that prejudicial error was committed by the failure of the court to read the form of verdict to be used by the jury provided they found the defendant not guilty. In that case the court had before it several forms of verdict to be returned by the jury, and failed to read one of them. The omission on the part of the trial court was held not to constitute prejudicial error.

█ A reading of the rejected instructions asked by the defendant based upon the failure of the prosecution to call the wife of the witness Lopez, shows that the court committed no error. The concluding portion of the refused instruction is as follows: ''I therefore instruct you that it is a conclusive presumption, that is, it must be taken as an admitted fact, that if the wife of Lopez was produced as a witness by the prosecution, her evidence would be adverse to the prosecution and her evidence would not corroborate the testimony of her husband Lopez, and her testimony would be contrary to that of her husband.'' This is a direct invasion of the province of the jury. However, it may be said there is nothing in the record to indicate that the prosecution wilfully failed to call the wife of the witness Lopez. The name indicates the nationality, and it is reasonable to assume that her knowledge of the English language was probably considerably limited. The instruction, of course, takes from the jury the question of whether the failure to call the wife of the witness Lopez was a wilful omission.

█ It is further contended that the conduct of the district attorney constituted prejudicial error. This is based upon the contention that the district attorney in his argument followed the language of section 1105, *supra*. This contention, of course, is answered by the cases which we have cited,

and furthermore, a reading of the arguments of the district attorney shows no foundation upon which to base a holding of prejudicial error.

It is further contended that the misconduct of one of the jurors demands a reversal of this cause. It appears that one of the jurors, during the course of the trial, talked for a few moments with a third party who approached the jury-box. It does not appear that the trial was proceeding at that time, or that any testimony was being given. It does not appear what the conversation between the juror and the stranger was, nor does it appear that any injustice was done the accused. Answering the contention of the appellant, the People rely upon the cases of *People* v. *Golsh,* 63 Cal. App. 609 [219 Pac. 456] ; *People* v. *Henry,* 132 Cal. App. 557 [23 Pac. (2d) 77] ; *People* v. *Dunne,* 80 Cal. 34 [21 Pac. 1130] ; *People* v. *Phelan,* 123 Cal. 551 [56 Pac. 424].

There being no showing of anything taking place detrimental to the interests of the defendant, prejudicial error cannot be based upon the alleged misconduct of the juror, although the juror might have rendered himself liable to a reprimand from the trial court.

Finding no reversible error, the order and judgment of the trial court are affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 24, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 8, 1937.